# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 06-1061

EVELYN J.D. SZYMANSKI,

*Plaintiff-Appellant,*

*v.*

COUNTY OF COOK,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 7573—**Rebecca R. Pallmeyer**, *Judge.*

ARGUED OCTOBER 20, 2006—DECIDED NOVEMBER 20, 2006

Before BAUER, EASTERBROOK, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* No stranger to litigation, Evelyn
Szymanski filed the present action alleging that Cook
County, through its employee Dr. John Raba, retaliated
against her in violation of Title VII of the Civil Rights Act of
1964. She claims she was "blackballed" after her employment with the County ended. The district court granted
summary judgment for the County and Szymanski appeals.

Szymanski is a registered nurse and a nurse practitioner.
She was hired by Cook County Hospital in January 1983. In
1999 she began filing, with the Equal Employment Opportunity Commission, charges of employment discrimination
against the County. By our count, the present claim is her
tenth. At least three have found their way to federal court.

In January 2000, she filed a charge alleging that the County discriminated against her on the basis of race and national origin (she is a Caucasian of Polish descent) by denying her overtime hours, overly scrutinizing her work, and failing to provide her with business cards. The case was tried in 2002, and a jury rejected Szymanski's claims. *Szymanski v. County of Cook*, No. 00 C 4737, 2002 WL 171977 (N.D. Ill. Feb. 1, 2002).

In April 2002, approximately 3 weeks after the verdict was returned in the case we just mentioned, Szymanski's employment was terminated. At that time, Dr. Raba was the medical director of Fantus Health Center, the County-run facility where Szymanski had been working. He was in charge of nurse practitioners. Raba claimed that Szymanski was terminated because she did not meet the requirement that, as a nurse practitioner, she was required to have a "collaborative agreement" with a licensed physician. Dr. Raba says Szymanski did not have an agreement; she says she did and that he interfered with her attempts to obtain another one.

Szymanski filed a charge of discrimination alleging that her termination was in retaliation for engaging in protected activity under Title VII. This time a jury agreed with Szymanski, and United States District Judge David Coar entered a judgment for back pay and front pay, the latter in lieu of reinstatement which the judge determined was not appropriate given the history of distrust and strained relations between Szymanski and the County. The judge also directed the County to expunge, from her personnel file, any reference to Szymanski's termination. *Szymanski v. County of Cook*, No. 01 C 9588, 2003 WL 259141 (N.D. Ill. Jan. 29, 2003).

Szymanski went about applying for other employment. She obtained a position working as a staff nurse at Little Company of Mary Hospital. At the same time, however, she

continued to apply for many other nursing positions. She contends that she failed to obtain those positions because she was blackballed by Dr. Raba.

Although Szymanski applied at a number of hospitals, she concentrates her claim on recommendations Dr. Raba sent or discussed with four entities: the University of Chicago Hospitals; Interim Healthcare and Integrated Health Solutions, both agencies which provide nurses to hospitals or clinics in the Chicago area; and Hunter Enterprises, a firm in the business of confirming employment references.

Szymanski claims that Dr. Raba said she was going to pay for "this" for the rest of her life. The "this" referred, says Szymanski, to her complaints against the hospital. She claims Raba blackballed her by giving negative references to prospective employers. She also says he ignored the district court order to expunge reference to her having no collaborative agreement and discussed her lack of an agreement and subsequent termination with prospective employers. For instance, she says he told Interim that she no longer met the County's job requirements as a nurse practitioner. With Hunter, she says Dr. Raba discussed her lack of a collaborative agreement and her termination. Szymanski says Cindy St. Aubin, the "nurse recruiter" at the University of Chicago Hospitals, told her that Dr. Raba said Szymanski was terminated for misconduct. Szymanski also makes much of the fact that, at her deposition, St. Aubin was instructed by her employer's counsel not to answer when asked why she failed to forward Szymanski's application for various vacancies that were open at the University of Chicago Hospitals.

Finding the evidence less than convincing support for a claim of retaliation, the district judge—the Honorable Rebecca R. Pallmeyer—granted summary judgment for the County. Szymanski appeals, and we review, *de novo*, the district court's decision. *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913 (7th Cir. 2006).

The anti-retaliation provision of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-3(a), prohibits employer actions that "discriminate against" an employee because she has "opposed" practices that Title VII forbids or because she has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." The provision is not restricted to discriminatory employer actions that affect the terms and conditions of employment encompassed by Title VII's substantive discrimination ban, 42 U.S.C. § 2000e-2(a). In fact, retaliation claims can be pursued based on actions that go beyond workplace-related or employment-related retaliatory acts and harm. In short, the provision extends to materially adverse nonemployment-related discriminatory actions that might dissuade a reasonable employee from lodging a discrimination charge. *Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405 (2006). And it is well-established that a former employee, such as Szymanski, can assert a claim that she was given negative references in retaliation for engaging in protected activity. *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997).

As everyone knows by now, a plaintiff alleging retaliation can prove her case either by the direct or indirect method of proof. To prevail, though, under either a direct or indirect method of proof, Szymanski had to show that the action taken by Raba—the nature of his responses to inquiries about her from possible future employers—can reasonably be branded as "adverse." And "adverse" in this setting has to mean, employing an objective standard, the dissemination of false reference information that a prospective employer would view as material to its hiring decision. What Raba said would have to be the sort of thing that is "likely to dissuade [present] employees from complaining . . . about discrimination." *Burlington Northern*, 126 S. Ct. at 2416. Although Szymanski talks in terms of blacklisting or blackballing, they are not legal terms, and we are not

convinced that retaliation must rise to the level of blackballing to qualify as an adverse action. It must, however, be clearly adverse, not trivial.

Szymanski's claim rests entirely on what Dr. Raba did or said. When asked at her deposition whether anyone else was involved in blackballing her, she repeatedly said only Dr. Raba: "All that I'm aware of is Dr. Raba." Ironically, despite her feeling that he was blackballing her, she consistently listed him as a reference.

So the question is, what did Dr. Raba say to the University of Chicago Hospitals, Interim, Integrated, and Hunter, and does it amount to an "adverse" action against Szymanski?

In the first instance, Hunter has limited relevance because it is not an employer or an employment agency. It is in the business of confirming references so that an applicant will know beforehand what a reference will say about her. When Szymanski hired Hunter to check her references, she told the company that she was terminated from Cook County because of protected EEOC activity. The company's records regarding a telephone conversation with Dr. Raba indicate that he referred to Szymanski's dismissal from employment and her inability to get a collaborative provider as Illinois law required. When asked why doctors would refuse to be collaborative providers, he said that Szymanski might do well to keep the doors of communication open with the staff, but he also said that most of the physicians are foreign-born and had concerns regarding liability issues. He mentioned that two or three nurse practitioners had legal action pending as a consequence. He also alluded to litigation regarding Szymanski's loss of employment. But he added that there was no issue regarding her clinical skills or knowledge and no negative assessments regarding her duties or the quality of her work. We think it would be quite a stretch

to say that Dr. Raba was blackballing Szymanski in this conversation or, in fact, even that he was giving her a negative reference. In her deposition, when asked if it was a negative reference, Szymanski said, "It could be. It's yes and no." To the extent that she did not like what he said, she could have attempted to refrain from using him as a reference. That seems to be the purpose of hiring Hunter in the first place. And, of course, as Hunter is not an employer and did not forward this information to prospective future employers, whatever Dr. Raba said would have had no effect on her employment prospects.

Szymanski points out that Dr. Raba's mentioning of her termination at all was a violation of Judge Coar's order. That may be true, but Dr. Raba said he did not know what was required by the order. Furthermore, as Judge Pallmeyer correctly pointed out, if anything, this is a matter to be taken up with Judge Coar.

Dr. Raba's recommendation to Interim was very limited. He filled out a half-page chart rating her on six attributes on a four-level scale: excellent, good, fair, and poor. He rated her "good" in three and "fair" in three. Additionally, as the reason for her leaving he wrote "[a]dministrative change in minimum job pre-requisites." It is not a great reference, but neither does it rise to the level of retaliation. Furthermore, Interim "hired" her, apparently as someone they would be willing to send to hospitals who needed nurses. It is not clear why she was never given an assignment.

Dr. Raba's recommendation to Integrated was somewhat better than the one to Interim. For this evaluation he apparently spoke to a recruiter on the telephone, and she filled out the form. Again, he was asked for an evaluation as to whether in nine qualities she was excellent, good, fair, or poor. He rated her as "good" in all categories. Then, as to her strong traits, he said she worked well with others and was meticulous and reliable. As to her weak traits, he listed

CPR and crash carts. He said he enjoyed working with her and that she would succeed as an agency RN. Finally, when asked whether he would trust her to take care of a family member of his, he said "yes." The recruiter for Integrated said she thought Dr. Raba gave Szymanski a very good reference. In fact, like Interim, Integrated hired Szymanski, though once again she never was given an assignment. To obtain an assignment, a person must call Integrated to inform the company of her availability. There is a dispute as to how often Szymanski called. The company says she notified them of her availability for only 4 days. To support that claim, Integrated pointed out that calls show up on the company's computer records, records which cannot be altered. Szymanski says she called repeatedly, but she has no telephone records to support her claim.

Szymanski's interaction with the University of Chicago Hospital System is truly bizarre. Szymanski claims that the recruiter, Ms. St. Aubin, told her that Dr. Raba said that Szymanski was fired for misconduct. St. Aubin denies having any conversation with Dr. Raba and says she did not check Szymanski's references. Dr. Raba did not recall a conversation with anyone at the University of Chicago. The district court properly found that Szymanski's statement about what Dr. Raba allegedly said to St. Aubin was hearsay and was inadmissible when offered for the truth of the statement. Szymanski also makes much of the fact that at her deposition St. Aubin was instructed not to answer questions regarding the university's failure to hire her, apparently reading some nefarious motive into the instruction. However, there are explanations for this instruction which have nothing to do with retaliation. Primarily, self-interest. At the deposition, the university's legal counsel first learned that Szymanski had filed an EEOC charge against the university. It is natural that counsel would not, at that point, want St. Aubin to be giving reasons why Szymanski had not been hired.

In addition, Szymanski was her own worst enemy. She said and did things which hindered her chances of obtaining employment. First and foremost, she sent 287 e-mails to the university seeking employment. After about 100, the university could reasonably get tired of hearing from her. Secondly, her written application contained a strange statement. The application form asked for the names of references. She wrote:

> you have not received my written permission for reference check. upon submitting the application somehow my application is electronically signed. This is illegal.

Then, in what she herself describes as a fairly representative e-mail—this time applying for housekeeping jobs—she said:

> Since I have been barred from attaining employment based on my education and experience maybe you may consider employment for me in this field—housekeeping. I believe you do discriminate national origin and protected EEOC activity. Have applied to four housekeeping jobs. I am way beyond HS graduate.

Given that there is no admissible evidence to show that Dr. Raba ever talked to anyone at the University of Chicago, and given the statements Szymanski herself made, it is impossible to conclude that her failure to be hired had anything at all to do with retaliation on the part of Cook County.

In short, we find that there is nothing in the record which establishes an adverse post-employment action taken by Cook County against Szymanski. It is hard to say in the abstract, for instance, that rating someone as "good" is adverse. If she had produced evaluations of her work at Cook County which showed her being consistently rated as "superior" or "excellent" by Dr. Raba, that might be some evidence that his "good" ratings after her termination were

retaliatory. But nothing of the sort exists in the record. Cook County is, in countless, obvious ways, not Lake Wobegon; we cannot assume that all Cook County nurses are above average. Objectively, some may simply be good, or even just fair.

The judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*