In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-3251

LINETTE METZGER,

*Plaintiff-Appellant*,

*v.*

ILLINOIS STATE POLICE,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Central District of Illinois.
No. 04 C 3013—**Richard Mills**, *Judge.*

———————

ARGUED DECEMBER 4, 2007—DECIDED MARCH 18, 2008

———————

Before RIPPLE, MANION, and WOOD, *Circuit Judges.*

MANION, *Circuit Judge.* Linette Metzger sued the Illinois
State Police ("State Police") alleging that when it denied
her promotions it violated Title VII by retaliating against
her for having previously filed a sex discrimination
suit against it. The district court granted summary judg-
ment in favor of the State Police. Metzger appeals, and
we affirm.

I.

Linette Metzger has been employed by the State Police as a civilian, or non-sworn employee, since 1985. Metzger had previously filed a lawsuit against the State Police in 1998. In that suit, Metzger alleged, among other things, that the State Police violated her rights under the Illinois Whistleblower Act[1] and the First Amendment by retaliating against her for reporting two of her co-workers for taking time off from work without using benefit time. Metzger also alleged that the State Police violated Title VII by discriminating against her on the basis of sex. Ultimately, those claims were unsuccessful. *See Metzger v. DaRosa*, 367 F.3d 699 (7th Cir. 2004).

The present suit concerns events that occurred after Metzger's 1998 lawsuit. In 1998, Metzger was transferred to the Firearms Services Bureau ("FSB").[2] At the FSB, Metzger reported to Linda Traylor, the manager of the FOID[3] section. Around the time of Metzger's transfer, Kirk Lonbom became the bureau chief of the FSB and started to reorganize it. As part of his reorganization, Lonbom created the FOID enforcement section in February 2000 and placed Master Sergeant Mark Whitley, a sworn

---

[1]  20 ILCS 415/19c.1.

[2]  In terms of hierarchy, at the head of the State Police is the director, with divisions beneath the director, bureaus within each division, and sections within each bureau. At the time of her transfer, the FSB was called the Crime Studies Section. For the reader's convenience, we will refer only to the FSB in this opinion.

[3]  FOID is an acronym for the Illinois Firearm Owner Identification Card Act, 430 ILCS 65/1.1 et seq.

State Police officer, in the position of section manager.[4] Metzger was then moved to the new enforcement section as Whitley's assistant. The duties of the FOID enforcement section included explaining eligibility for and the revocation of FOID cards to Illinois law enforcement personnel, educating law enforcement officers about what actions they must take in order to get firearms out of the hands of potentially dangerous individuals, revoking FOID cards for individuals who pose a clear and present danger of significant harm, and assisting law enforcement officers in the field.

In January 2002, Lieutenant Rick Kahrliker, another sworn State Police officer, replaced Mark Whitley and became the section manager of FOID enforcement. In an affidavit submitted in the district court, Metzger asserted that she performed the exact same job duties Kahrliker performed during his tenure as FOID enforcement section manager. Because of the work she performed, Metzger sought a pay upgrade from Administrative Assistant II, her current payroll title, to Public Services Administrator ("PSA"). In February 2002, Metzger and Kahrliker submitted a revised job description for Metzger's position to Lonbom for approval. Lonbom did not agree that Metzger's job duties warranted PSA classification, and told Kahrliker that he could not promote Metzger because of budgetary constraints. As a result, in May 2002 Metzger filed an employment discrimination charge with the Illinois Department of Human Rights ("DHR")

---

[4] Both the FOID program and FOID enforcement section were distinct sections within the FSB. While the FOID enforcement section was created by Lonbom, the FOID program pre-existed Lonbom's tenure as bureau chief.

alleging, among other things, that the State Police had retaliated against her because of her testimony in her 1998 lawsuit by failing to promote her to PSA in February 2002. The charge was dismissed for lack of evidence in August 2003.

In June 2002, Metzger requested an audit by the Illinois Department of Central Management Services ("CMS") to determine whether her position classification should be upgraded to PSA. CMS is an agency independent from the State Police that, along with the Illinois Civil Service Commission, is in charge of determining pay classifications for state employees. *See* 20 ILCS 415/8a(1). Under the CMS Personnel Rules, another state agency can request that CMS perform a job audit to determine whether the employee's duties warrant an upgrade in payroll classification. As part of the audit, Metzger and Kahrliker completed a Position Audit Questionnaire listing Metzger's job duties. Once Metzger and Kahrliker completed the questionnaire, Lonbom received a copy of it. Referring to the description of Metzger's job duties in the questionnaire as "grandiose," Lonbom was concerned that the questionnaire inaccurately inflated the level of responsibility that Metzger's position had. Lonbom testified at his deposition that he may have written a memo to CMS setting forth his concern that Metzger's questionnaire answers were inaccurate. While the audit was proceeding, Kahrliker reported having a conversation with Lonbom in December 2002 during which Lonbom said that he did not care if Metzger was the best "god damn" employee in the department, he would never promote her.

In January 2003, CMS sent a letter to the director of the State Police informing the director that it had com-

pleted its review and determined that Administrative Assistant II, and not PSA, was the proper classification for Metzger's position. The letter stated that CMS had compared the duties assigned to Metzger's position with other positions in the State Police, as well as similar positions in other state agencies, and concluded that they were typical of positions classified as Administrative Assistant II. Metzger requested reconsideration of CMS's decision and, in March 2003, CMS initiated a review of its decision. In a letter dated August 2003, CMS affirmed its previous decision. Included with the letter was a four-page, single-spaced Reconsidered Decision wherein CMS described how it reached its decision. The Reconsidered Decision listed four different sources that CMS had consulted in order to determine what Metzger's duties and responsibilities were: Assistant Bureau Chief Larry Grubb; Scott Giles, who had replaced Lonbom as bureau chief[5]; the current official job description for Metzger's position; and the Position Audit Questionnaire produced by Metzger and Kahrliker. CMS then compared its formulation of Metzger's job duties with the job duties of the two PSA positions that Metzger proffered as comparable in scope. CMS found that the positions were not comparable.

While the reconsideration of CMS's audit was underway, Kahrliker retired. Metzger had previously expressed interest in his position to Lonbom, but Giles, as bureau

---

[5] Lonbom was promoted to assistant deputy director for the Information Technology Command in the State Police, a divisional position with supervisory authority over the FSB. Lonbom remained in the chain of command for the FSB; any personnel changes in the FSB required his approval.

chief, recommended Master Sergeant Mark Atchison, another sworn State Police officer, for the position. After Atchison was selected in May 2003, Metzger filed another retaliation charge with the DHR, this time alleging, among other things, that Giles had interfered with CMS's job audit and that the State Police had retaliated against her by not promoting her to PSA in May 2003.

In January 2004, Metzger filed her complaint in this action in the district court. After receiving her right-to-sue letter for her May 2003 charge of retaliation, Metzger amended her complaint to include allegations that the State Police retaliated against her by failing to promote her and interfering with her CMS job audit. The State Police moved for summary judgment, and the district court granted the State Police's motion on all of Metzger's claims. Metzger appeals.

## II.

On appeal, Metzger argues that the district court erred in granting summary judgment on her retaliation claims based on the CMS job audit and the failure of the State Police to promote her to Kahrliker's position. We review a district court's grant of summary judgment de novo. *Brown v. Ill. Dep't of Natural Res.*, 499 F.3d 675, 680 (7th Cir. 2007) (citing *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 690 (7th Cir. 2006)). In doing so, we construe all facts and reasonable inferences in the light most favorable to the non-moving party, Metzger. *Id.* (citing *Healy v. City of Chicago*, 450 F.3d 732, 738 (7th Cir. 2006)). "Summary judgment is proper if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Id*. (quoting Fed. R. Civ. P. 56(c)).

The anti-retaliation provision of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-3(a), prohibits employer actions that "discriminate against" an employee because she has "opposed" practices that Title VII forbids or because she has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." A plaintiff alleging retaliation can prove her case either by the direct or indirect method of proof. *Syzmanski v. County of Cook*, 468 F.3d 1027, 1029 (7th Cir. 2006). Under the direct method, direct evidence of retaliation is not required. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008) ("This Court recently has clarified that . . . 'circumstantial evidence that is relevant and probative on any of the elements of a direct case of retaliation may be admitted and, if proven to the satisfaction of the trier of fact, support a case of retaliation.' " (quoting *Treadwell v. Office of Ill. Sec'y of State*, 455 F.3d 778, 781 (7th Cir. 2006))). Rather, a plaintiff must show through either direct or circumstantial evidence that (1) she engaged in statutorily protected activity; (2) she suffered an adverse action taken by the employer; and (3) there was a causal connection between the two. *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007). Under the indirect method, a plaintiff must establish a prima facie case of retaliation by showing that (1) she engaged in statutorily protected activity; (2) she met her employer's legitimate expectations; (3) she suffered an adverse action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Nichols v. S. Ill. Univ.-*

*Edwardsville*, 510 F.3d 772, 785 (7th Cir. 2007). If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the employer to produce a non-discriminatory reason for its employment action. *Id*. If the employer meets its burden of production, the burden of proof then remains with the plaintiff to show that the employer's proffered reason is pretextual. *Id*.

On appeal, both of Metzger's retaliation claims hinge on the alleged retaliatory animus of Kirk Lonbom, the bureau chief, as evidenced in Lonbom's statement to Kahrliker that he did not care if Metzger was the best employee in the department because he would never promote her. With respect to her claim of retaliation involving her failure to obtain PSA classification, Metzger contends that Lonbom unduly influenced CMS's decision not to have her position reclassified to PSA.

Metzger did not raise this influence argument in the district court. In her response brief in the district court, Metzger argued that there was a triable issue of pretext because the State Police gave conflicting reasons about why Metzger was not upgraded to PSA. *Cf. Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 851 (7th Cir. 2007) (noting that "[s]hifting and inconsistent explanations can provide a basis for a finding of pretext"). In support of that argument, Metzger pointed to Kahrliker's affidavit that stated Lonbom told Kahrliker that Metzger could not be upgraded to PSA for budgetary reasons, on the one hand, and the evidence of CMS's decision, on the other. Metzger has abandoned that argument here and, conceding that CMS was the decisionmaker, now argues that Lonbom unduly influenced CMS's decision. But Metzger never asserted before the district court the argument that Lonbom impermissibly influenced CMS's

decisionmaking process. Consequently, she has waived her right to assert it here. *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 608 n.4 (7th Cir. 2007) ("On numerous occasions we have held that if a party fails to press an argument before the district court, he waives the right to present that argument on appeal. . . . As we have made clear, it is axiomatic that arguments not raised below are waived on appeal." (quoting *Heller v. Equitable Life Assurance Soc'y*, 833 F.2d 1253, 1261-62 (7th Cir. 1987) (citations and quotation marks omitted))).

Nevertheless, the argument is without merit. As was stated above, Metzger's claim hinges around the retaliatory animus allegedly residing in Lonbom, and Metzger now concedes that CMS, not Lonbom, made the decision not to reclassify her position to PSA. Such a concession is ordinarily fatal, since to prevail "under the direct method a plaintiff must provide direct or circumstantial evidence that the *decisionmaker* has acted for a prohibited reason." *See Rogers v. City of Chicago*, 320 F.3d 748, 754 (7th Cir. 2003) (emphasis in original). Similarly, under the indirect method, animus harbored by a non-decisionmaker is usually ineffective to show pretext where—as here—there is a non-retaliatory reason for the employer's decision. *See, e.g., Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 789 (7th Cir. 2004) ("Nor are we any more convinced . . . that actions and statements by non-decisionmakers reveal the pretextual nature of Con-Way's decision."). Of course, in certain circumstances a non-decisionmaker can exert influence of such a degree as to make his employer liable for his actions. *See, e.g., Brewer v. Bd. of Trs. of Univ. of Ill.*, 479 F.3d 908, 917-20 (7th Cir. 2007) (describing in detail the "cat's paw" analysis). However, "where a decision maker is not

wholly dependent on a single source of information, but instead conducts its own investigation into the facts relevant to the decision, the employer is not liable for an employee's submission of misinformation to the decision maker." *Id.* at 918 (citing *Byrd v. Ill. Dep't of Pub. Health*, 423 F.3d 696, 708 (7th Cir. 2005)). In this case Metzger offered no evidence that Lonbom's communication to CMS describing Metzger's job duties as "grandiose" actually influenced CMS. Nor did Metzger present evidence that CMS's audit was anything but independent from Lonbom's influence. *See id.* at 917 ("For a nominal non-decision-maker's influence to put an employer in violation of Title VII, the employee must possess so much influence as to basically be herself the true 'functional[ ] . . . decision-maker.'" (quoting *Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1015 (7th Cir. 2004) (alteration in original))).

Indeed, an examination of CMS's reconsidered decision belies Metzger's assertion that Lonbom exercised any improper influence over CMS's decision. The reconsidered decision listed four different sources that CMS consulted in order to determine what Metzger's duties and responsibilities were: Assistant Bureau Chief Larry Grubb; Scott Giles, who had replaced Lonbom as bureau chief; the current official job description of Metzger's position; and the Position Audit Questionnaire produced by Metzger and Kahrliker. While Metzger asks the court to speculate that CMS relied more heavily on Lonbom's characterization of her duties than the description submitted by Metzger and Kahrliker (not to mention the other sources of information CMS solicited), Metzger produces no evidence that CMS did so. *Cf. Dorsey*, 507 F.3d at 628 (noting that "mere speculation" that employee

unduly influenced employer's action is "insufficient to overcome summary judgment"); *see also Rozskowiak v. Vill. of Arlington Heights*, 415 F.3d 608, 613 (7th Cir. 2005) (no evidence that police commander who was a member of the command staff that recommended to terminate plaintiff had "singular influence" over the command staff's decision); *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 730-31 (7th Cir. 2004) (finding insufficient influence where the statement given by the employee alleged to harbor racial animus was only one element of a comprehensive investigation into the incident that was the cause of the plaintiff's discipline). Thus, because there is no evidence that CMS's investigation was anything but independent of Lonbom's influence, the State Police cannot be liable for any alleged retaliatory animus Lonbom harbored against Metzger.

In an attempt to avoid the above conclusion, Metzger offers a novel theory of liability to save her claim. Metzger asserts that the materially adverse action that forms the basis of her retaliation claim is not CMS's decision denying her a promotion to PSA, but simply Lonbom's communication to CMS that Metzger's description of her job duties was "grandiose."[6] A "materially adverse action" in the context of Title VII's anti-retaliation provision means any conduct that might dissuade a reasonable employee from lodging a discrimination charge. *Szymanski*, 468 F.3d at 1029 (citing *Burlington N. & Santa Fe. Ry. Co. v. White*, 126 S. Ct. 2405 (2006)). According to Metzger, a rational employee would likely forego a claim

---

[6] We reiterate that none of the arguments for her retaliation claim based on the CMS audit that Metzger now offers was presented to the district court.

of discrimination if they knew that a higher-ranking supervisor would make it more difficult for them to be promoted. In the abstract, one can think of different situations where that statement may ring true. However, Metzger has failed to show that this case is one of them. On that point our decision in *Szymanksi v. County of Cook*, 468 F.3d 1027 (7th Cir. 2006), is instructive. In *Szymanksi*, the plaintiff alleged that, after her termination, her former employer retaliated against her for engaging in protected activity by giving poor recommendations to potential employers. *Id*. at 1028. In affirming the district court's grant of summary judgment in favor of the employer, we stated that the evaluations by the plaintiff's former supervisor—standing alone—were not enough to show a materially adverse action:

> It is hard to say in the abstract, for instance, that rating someone as "good" is adverse. If [the plaintiff] had produced evaluations of her work at Cook County which showed her being consistently rated as "superior" or "excellent" by [her supervisor], that might be some evidence that his "good" ratings after her termination were retaliatory. But nothing of the sort exists in the record.

*Id*. at 1031. The same problem exists here. Metzger points to no evidence in the record to show that Lonbom's characterization of her self-description of her job duties as "grandiose" was, in fact, adverse. Metzger claims that there is a factual dispute as to whether Lonbom's characterization was true because she argues it contradicted the Position Audit Questionnaire that she, along with Kahrliker, had provided CMS. However, Metzger points to no evidence in the record that shows she accurately described her duties and that Lonbom's characteriza-

tion was therefore false or misleading. Thus, Metzger has failed to create a genuine issue of material fact as to whether Lonbom's "grandiose" characterization was an adverse action. Accordingly, the district court properly granted the State Police summary judgment on Metzger's retaliation claim based on CMS's job audit and her failure to attain PSA status.

Metzger's claim of retaliation based on the State Police's failure to promote her to Kahrliker's position in May 2003 is similarly defective. The unrebutted evidence in the record shows that Giles, not Lonbom, made the decision to place Atchison in the position of FOID enforcement section manager. Like the position audit by CMS, Lonbom may have had some input into Giles's decision to select Atchison.[7] But regardless of Lonbom's input, Metzger's claim ultimately fails because she has produced no evidence undermining Giles's proffered reason for Atchison's selection: namely, that Atchison was a sworn officer and Metzger was not. *See Rogers*, 320 F.3d at 754; *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) ("If the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, he is entitled to summary judgment."). The unrebutted testimony of both Giles and Lonbom, who created the FOID enforcement section, was that the position of FOID

---

[7] Giles testified at his deposition that he discussed with Lonbom the history of the FOID enforcement section manager and the duties of that position. Lonbom testified at his deposition that he was up the chain of command from Giles and that his approval was therefore necessary before any changes in the placement of FSB personnel could take place.

enforcement manager required a sworn officer.[8] Metzger attempts to cast doubt on the existence of such a require-ment, arguing that the State Police never presented a position description that contained such a requirement. However, according to Metzger's own deposition testi-mony, there was no need for a job description of a posi-tion held by a sworn officer, since sworn officers were not bound by the personnel code that applied to civilian employees. More importantly, though, the practice of the bureau confirms the existence of the requirement. It is undisputed that since Lonbom created the position in 2000 it has always been held by a sworn officer: first by Master Sergeant Mark Whitley, then by Lieutenant Rick Kahrliker, and currently by Master Sergeant Mark Atchison.[9] Both Lonbom and Giles in their deposi-

---

[8] Indeed, Lonbom testified that he wanted as FOID enforcement section manager, not just a sworn officer, but a sworn officer ranked at the level of master sergeant or above. (State Police officers are ranked, from lowest to highest: trooper, sergeant, master sergeant, lieutenant, captain, and major. *See* 20 ILCS 2610/8.) All of the FOID section managers have been ranked master sergeant or above. Whitley and Atchison were master sergeants, while Kahrliker was a lieutenant.

[9] Although Metzger's attorney at oral argument represented that the position of FOID enforcement section manager had been performed by a non-sworn employee, Linda Traylor, that assertion is contrary to Metzger's own deposition testimony. The record indicates that, as the FOID program manager, Traylor may have been performing before February 2000 some of the duties that, after Lonbom reorganized the FSB and created the FOID enforcement section in February 2000, became the prov-ince of the FOID enforcement section manager. However,

(continued...)

tion testimony gave several reasons why a sworn officer heading the FOID enforcement section was preferable to a civilian employee, including that having a sworn officer in the position would foster better communication between the FOID enforcement section and the other law enforcement agencies with whom it had to liaise.[10]

Metzger, of course, disputes the preference for having a sworn officer filling the position. Noting that the managers of the four other sections in the bureau, as well as the bureau chief and the assistant bureau chief, are civilian rather than sworn employees, Metzger finds it "difficult to understand" why the FOID enforcement section manager had to be a sworn officer. Metzger offers evidence that she performed all of the same duties as her supervisor Kahrliker to show that the requirement of a sworn officer makes little sense. Our task, however, is not to pass judgment on the wisdom of having a sworn versus an unsworn employee occupy the position of FOID enforcement section manager. *See Healy*, 450 F.3d at 742 n.12 ("[T]his court 'do[es] not sit as a superpersonnel department where disappointed applicants or employees can have the merits of an employer's decision replayed to determine best business practices.'" (quoting *Blise v. Antaramian*, 409 F.3d 861, 868 (7th Cir. 2005) (second alteration in original))). Indeed, we are ill-equipped to make such determinations. We lack the expertise in law enforcement generally, and the

---

[9] (...continued)

Metzger testified that Whitley was the first person to occupy the position of FOID enforcement section manager when that position was created in February 2000.

[10] As Atchison put it: "Generally law enforcement wants to talk to somebody that's actually with law enforcement."

structuring of law enforcement bureaucracies in particular, that would be necessary to judge the pros and cons of having a sworn officer in a certain position. Rather, our role is simply to determine whether a rational jury, when viewing the facts in the light most favorable to Metzger, could find that the State Police violated Title VII by promoting Atchison instead of Metzger to FOID enforcement section manager. Because we find that a jury could not, we conclude that the district court did not err in granting summary judgment in favor of the State Police on Metzger's claim of retaliation based upon the State Police's failure to promote her to the position of FOID enforcement section manager.

### III.

The district court did not err in granting summary judgment in favor of the State Police on Metzger's retaliation claims. Metzger cannot show that the State Police retaliated against her when CMS denied her an upgrade to PSA because there is no evidence that CMS's decision was influenced in any way by the retaliatory animus Lonbom allegedly harbored against her. Metzger's claim of retaliation involving her failure to be promoted into the position of FOID enforcement section manager does not survive summary judgment because she has not produced sufficient evidence to create a genuine issue of material fact as to whether retaliation, rather than the requirement that the position be filled by a sworn officer, was the reason for Giles's decision to select Atchison. We AFFIRM.