NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 17, 2008[*]
Decided July 24, 2008

**Before**

JOEL M. FLAUM, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 08-1578

| | |
|---|---|
| ALBERT J. MARTIN, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of |
| | Wisconsin. |
| *v.* | |
| | Nos. 05-C-209 & 05-C-1097 |
| NORTHWESTERN MUTUAL | |
| LIFE INSURANCE COMPANY, | Rudolph T. Randa, |
| *Defendant-Appellee.* | *Chief Judge.* |

**O R D E R**

Albert Martin sued his employer, Northwestern Mutual, alleging race, sex, and color discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 1981, and the Americans with Disabilities Act. The district court granted summary judgment after determining that Martin failed to make a prima facie case for any of his claims. We affirm.

---

[*] After examining the briefs and the record we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

Martin is an African-American male.  He suffers from anxiety disorder, agoraphobia, and social phobia, and he takes prescription medication.  Martin started work with Northwestern Mutual in 1997, and in January 2002 he began working in the information systems department as a program analyst, where he was supervised by Barbara Joslin.  In 2003 problems surfaced in Martin's performance and in his relationship with his supervisors.  Joslin and Human Resources noted that Martin became upset when confronted with criticism of his performance.  He discarded feedback without considering it, often attempted to excuse his mistakes by claiming that he was "new," did not contribute at meetings, and did not use his own resources to solve his difficulties before seeking outside help.

By late 2003 Martin was upset that he was not receiving additional training on some of the company's computer systems, and he wrote to Human Resources that he was "beyond furious."  He continued to express dissatisfaction through the spring of 2004.  But all the while, his supervisors had determined that he was not ready for additional training.  In their opinion, he was not performing his existing duties satisfactorily and was not ready for new tasks or additional responsibility.  When Martin attended training, he often asked questions that showed his knowledge was far behind his coworkers.  Some of them accused him of taking time away from their own learning and pointed out that he browsed the internet and did not listen to the answers to his own questions.

Towards mid-2004, managers informed Martin that he was barely meeting expectations and had to improve or his work would fall below company standards.  Martin became angry about the criticism with his supervisor, Joslin, yelling and wagging his finger in her face.  He called one of his supervisors a liar and intoned that he would get her fired by proving her "lies" to Human Resources, who would "take care of her."  Joslin was frightened by Martin's behavior, and she was not the only one.  With clenched fists and raised voice, Martin approached John Dowell, the Director of Diversity for Northwestern Mutual, complaining about the "exaggerations" of his supervisors.  Dowell retreated in fear.  Martin told Joslin he would "hang [her] in court," and he was so angry that Dowell sent him home early.  The company required Martin to take about a week off of work while he attended its Employee Assistance Program to ensure he was not dangerous or suicidal.

In July 2004 Northwestern Mutual offered Martin his job back with a warning that he must behave respectfully and not intimidate others.  In August, the company told Martin it was pleased with his progress.  This was also the time the company received notice from the EEOC of Martin's discrimination claims.  In October, the company addressed additional performance concerns with Martin, which so upset Martin that he stormed out of a meeting with supervisors.  Joslin was so shaken by his behavior that she contacted security about her fear that he may harm her, rearranged her office furniture so that she faced the door, asked

coworkers to call security if Martin barged into her office, and had an escort walk her to her car after work.

Several days later Northwestern Mutual reprimanded Martin for his behavior and warned him that further similar acts would result in termination. Martin responded by leaving the office, buying a bullhorn, and voicing his complaints with his supervisors across the street from the office with the bullhorn. Martin threatened to contact the SEC and the FBI and report criminal behavior by the company. He sat outside the office over the following weekend and repeatedly called Dowell, telling him that he saw when Dowell entered the building. Dowell and the director of employee relations met with Martin again about his behavior, and Martin told them he was extremely angry, to the point where "all consequences be damned." Northwestern Mutual terminated him at the end of October 2004.

Martin's complaint alleged that Northwestern Mutual discriminated against him on the basis of his race, sex, color, and disability when it terminated him and also when it failed to train him as he requested, asked him to leave the premises after his July 2004 outburst, and gave him undesirable work assignments and poor reviews. He also alleged that all of these actions were in retaliation for his EEOC filing. Lastly, he claimed that the company failed to accommodate his disability. He renews these arguments here.

The district court was correct that Martin failed to show a similarly situated employee of a different race, sex, or color whom Northwestern Mutual treated differently. *See Atanus v. Perry*, 520 F.3d 662, 672-73 (7th Cir. 2008); *see also Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007) (applying the same prima facie case to claims under § 1981). He certainly does not identify anyone with similar behavioral reprimands who was not fired. The best he can do is point to a white male and female who received some training that he did not receive. But he falls short of showing that they were not also denied training that they requested, that they received more overall training, or that they were groomed for advancement in a way not equally available to Martin. Martin's prima facie case is also missing evidence that he was performing satisfactorily, *see id.*; in fact much evidence suggests the contrary. These shortcomings also doom any indirect proof of Martin's retaliation claim. *See Metzger v. Illinois State Police*, 519 F.3d 677, 681 (7th Cir. 2008). And he fails to make a prima facie case of discrimination or retaliation under the direct method because he does not demonstrate a causal connection between his filing and his discipline or termination, especially in light of his poor performance. *See id*.

As for Martin's claims under the ADA, the district court was right to find that Martin has not demonstrated that he is disabled as defined by the ADA. In his answer to Northwestern Mutual's motion for summary judgment, Martin submitted a doctor's

diagnosis of his conditions, and he explained that he has difficulty focusing and is often gripped with anxiety even in the presence of only a few other people. But he did not provide a diagnosis that he is disabled, an explanation of how or why he is substantially limited in a major life activity, or evidence that Northwestern Mutual understood him to be limited in such a way. *See Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008). It was only in his last three months of employment that Martin requested any accommodations for his alleged disability. He asked that his supervisors put their critiques in writing with examples, that performance meetings be scheduled apart from training sessions, that Joslin should author all written communication to avoid other supervisors from reporting false information, and that he not be required to perform data entry. These requested accommodations did not evince any limitation of a major life activity, nor did the seven prior years that he worked at Northwestern Mutual without the need for accommodation.

But even if Martin were disabled under the ADA, he still did not show that Northwestern Mutual failed to accommodate him or discriminated against him. As to his accommodation claim, he does not show that Northwestern Mutual failed to fulfill his requests for accommodation that were tied to his actual medical condition (and not just a personal desire to engage in different work). The company agreed to write their critiques and to schedule performance meetings apart from training sessions, and it agreed that Joslin would review comments by other supervisors. The company required Martin to continue data entry because it was an essential part of his job, but it also assigned Martin a "job coach" and Joslin met with him to develop his performance. As to his discrimination claim, given Northwestern Mutual's dissatisfaction with Martin's performance and his unprofessional conduct, the district court was correct that he is not otherwise qualified to perform his job, an element essential to his prima facie case. *See Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 862 (7th Cir. 2005).

Beyond all of this, however, Martin simply does not show that Northwestern Mutual's explanations for its actions are pretextual. *See Ellis v. United Parcel Service, Inc.*, 523 F.3d 823, 828 (7th Cir. 2008) (Title VII discrimination); *Metzger*, 519 F.3d at 681 (Title VII retaliation); *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004) (ADA). The records presented by Northwestern Mutual at summary judgment demonstrate a long history of dissatisfaction with Martin's performance and fears about what the company perceived as his aggressive and possibly violent behavior. The company explained that he did not receive the training he requested because he was overwhelmed and underperforming on the tasks he already had, and his supervisors felt he was not qualified to handle more responsibility. They documented his unsatisfactory excuses for his poor performance, his inattentiveness, and his lack of effort to improve. They documented his yelling and angry attitude when faced with criticisms, and the quite drastic fear he inspired in his supervisors,

especially Joslin. Martin's unprofessional decision to air his complaints with the company by shouting into a bullhorn across the street speaks for itself.

There was adequate reason for Northwestern Mutual to restrict Martin's training and assigned tasks and to reprimand and terminate him. Martin has not shown that any part of the list of reasons offered by Northwestern Mutual is pretextual. He may argue that their criticisms were unfair and their fears unfounded, but that is not the issue before this court. *See Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008). Instead, we must ask if Northwestern Mutual was motivated by these factors as opposed to Martin's race, sex, color, or alleged disability, and Martin has not evinced a material factual dispute of an improper motive.

AFFIRMED.