In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3473

DARRELL POER,

*Plaintiff-Appellant*,

*v.*

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:07-cv-01425-SEB-JMS—**Sarah Evans Barker,** *Judge*.

ARGUED FEBRUARY 10, 2010—DECIDED MAY 27, 2010

Before RIPPLE, MANION and WILLIAMS, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Darrell Poer brought this action
under Title VII of the Civil Rights Act of 1964, 42 U.S.C.
§ 2000e et seq., against his employer, the Social Security
Administration ("SSA" or "Administration"). He alleged
that the Administration failed to promote him because
he had engaged in protected activity, specifically he had
testified on behalf of two other employees. The district
court granted summary judgment to the Administration.

For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A. Facts[1]

#### 1.

Mr. Poer's claim concerns the filling of a GS-13 Supervisor Attorney-Adviser position in the SSA's Office of Disability Adjudication and Review ("ODAR") located in Indianapolis, Indiana. Because the procedure for filling a position at this level is convoluted and also bears upon Mr. Poer's claim, we set it forth in some detail.

The Regional Chief Administrative Law Judge is the selecting official for GS-13 attorney positions. At the relevant time, Paul C. Lillios was the Regional Chief Administrative Law Judge for Region V, which encompasses Indiana, Illinois, Wisconsin, Michigan, Ohio and Minnesota. It was Judge Lillios's practice to seek the recommendation of the Hearing Office Chief Administrative Law Judges regarding the selection of GS-13 senior attorneys. Administrative Law Judge Blanca de la Torre acted as the SSA's Hearing Office Chief Administrative

---

[1] Because Mr. Poer's claim was disposed of on summary judgment, we construe all facts and reasonable inferences in favor of the nonmoving party, here Mr. Poer. *See, e.g.*, *Marion v. City of Corydon, Ind.*, 559 F.3d 700, 704 (7th Cir. 2009).

Law Judge in Indianapolis. In this capacity, it was Judge de la Torre's responsibility to determine the organizational structure, staffing needs and composition of staff at the Indianapolis office.

Before an area ODAR office within Region V was allowed to announce an open position, it had to request authority to fill the position from the Region V office. In 2005, Frank McGinley, ODAR's Region V Regional Management Officer, was responsible for reviewing and approving such requests. If the request were approved, it would be sent to the Human Resources Specialist, a position that was held by Addie Price.

Price then would prepare the vacancy announcement, collect the applications and create a "well-qualified certificate,"[2] which listed the applicants that had been determined to have the best qualifications for the vacant position. Price also was responsible for compiling the certificate package, which included the well-qualified certificate and the applications of the individuals who were listed on the certificate. "When the number of candidates listed on the certificate did not provide a sufficient field of candidates from which to choose, it was a common and longstanding practice of Region V ODAR to cancel the announcement for lack of a sufficient field of candidates." R.43, Ex. 3 ¶ 10. According to McGinley, "it was desirable to have at least three viable candidates to choose from because this help[ed] to ensure that the best possible selection [wa]s made." *Id.*

---

[2] The parties refer to this document both as the "well-qualified certificate" and the "best qualified certificate."

Price would forward the compiled package to Mary Jo Awbrey, who was responsible for personnel actions in McGinley's office. Upon receipt of the certificate package, Awbrey would report to McGinley that the certificate package had arrived and then send it to the ODAR's Hearing Office Chief Administrative Law Judge.

If the Hearing Office Chief Administrative Law Judge selected an individual for a GS-13 attorney position, she would sign the well-qualified certificate, indicate the choice and return the certificate to Region V head-quarters in Chicago. At that point, McGinley would review the choice with Judge Lillios. If Judge Lillios agreed with the recommendation, he would sign the well-qualified certificate as the selecting official. Awbrey then would send the certificate package to Price to imple-ment the personnel action.

## 2.

Since 1990, Mr. Poer has worked as an Attorney Adviser for the ODAR in Indianapolis. In 2003, Mr. Poer testified on behalf of two female African-American employees who had filed suit against Allen Kearns; Kearns was the Hearing Office Director and Mr. Poer's second level supervisor.[3] Following Mr. Poer's testimony, both

---

[3] Kearns served as Hearing Office Director for the Indianapolis office from 1993 until 2008. He was responsible for acting on behalf of Judge de la Torre in all matters relating to the

(continued...)

Mr. Poer and Kearns remained employed at the SSA. Mr. Poer admits that, for the two years following his testimony, he suffered no retaliation at the hand of Kearns or anyone else at the Administration.

In 2005, Daniel Mages was reassigned from his position as a GS-13 Senior Attorney-Adviser to a GS-13 Supervisory Attorney-Adviser within the Indianapolis office; this reassignment resulted in the opening of a GS-13 Senior Attorney-Adviser position. In October 2005, at the direction of Judge de la Torre, Kearns requested and received authority to announce an open GS-13 Senior Attorney-Adviser position.

On November 14, 2005, the SSA posted the job opening, which was advertised throughout Region V. Price was responsible for drafting and posting the announcement. The announcement provided that travel and relocation expenses would be authorized in accordance with applicable regulations. Mr. Poer applied for the position.

After receiving the applications, Price assembled the well-qualified certificate, which listed the final candidates from whom a selection would be made. This certificate included Mr. Poer and two other individuals, one from Illinois and one from Iowa. Illinois is in Region V; Iowa

---

[3] (...continued) management and operation of the Indianapolis ODAR, including planning, policy implementation, budget, personnel and facilities. He also had the duty of tracking vacancy announcements and certificate packages and keeping Judge de la Torre apprised of the status of the application process.

is not. The certificate was sent to Kearns and was valid from December 16, 2005, the date on which it was generated, through March 16, 2006.

At the time the certificate was issued, the SSA was under severe budgetary restrictions. A temporary hiring freeze was implemented in January 2006, which "meant that no new hires could be made and that no full time equivalents (FTE's) could be brought in from another region." *Id.* ¶ 19. Additionally, relocation expenses for any candidates had to be approved through ODAR Headquarters in Falls Church, Virginia. Because of the fiscal limitations at the time, "such requests were to be made only for positions that were urgent and critical to the mission of the office where the positions [we]re located"; senior attorney positions were *not* considered "urgent and critical." *Id.* ¶ 21. McGinley explained that, "[g]iven the budgetary constraints, I would not have even asked Headquarters for relocation expenses for the Indianapolis senior attorney position because I knew that my request would have been denied." *Id.*

Judge de La Torre stated that, during this time, she participated in regular conference calls with Judge Lillios and McGinley. During these calls, the Hearing Office Chief ALJs were apprised of the SSA's severe budget limitations and of the "various budgetary concerns stemming from that situation, including a hiring freeze, and restrictions in relocation allocations and full-time equivalent ('FTE') positions." R.43, Ex. 4 ¶ 5.

Judge de la Torre recalled that, upon receiving the certificate, Kearns informed her that "there were three candidates on the list"; she "understood," incorrectly, "that

two candidates were from outside our region, and the third candidate was [Mr. Poer], who [wa]s assigned to the Indianapolis Office." R.43, Ex. 5 ¶ 6. Sometime in January, Kearns met with Judge de la Torre to discuss the candidates and the open position. Judge de la Torre believed that relocation expenses would not be approved for any candidate, and, therefore, she could not consider the candidates who would have to relocate to Indianapolis; this eliminated everyone but Mr. Poer from consideration. Judge de la Torre believed, however, that she "should be able to select a candidate based on merit and not by virtue of elimination." *Id*. ¶ 8. This practice, she believed, was "consistent with [her] training and experience as a manager within the SSA. In the past, the agency ha[d] returned certificates and reannounced positions when the certificates did not contain a sufficiently wide field of candidates." R.43, Ex. 4 ¶ 11.[4]

On March 16, 2006, the certificate expired without any individual being hired. In April 2006, Kearns received a call inquiring about the location of the certificate. He subsequently signed and returned it, writing "No selection made—no FTEs available." R.43, Ex. 8, Attach. 2.

---

[4] Judge de la Torre also stated that "[t]his [wa]s the first time that I ha[d] been confronted with a similar situation, that is, having only one candidate to select and returning a certificate without making a selection." She noted that, "[f]or every selection that I ha[d] made in the 2.5 years that I ha[d] held my position, I [was] provided with a larger number of applicants from which to make a selection." R.43, Ex. 5 ¶ 9.

Shortly after this, Kearns met with Mr. Poer. In this conversation, Kearns represented himself as the selecting official and stated that "I couldn't get FTEs . . . for the other two people and that left you on the list and I couldn't select you because that wouldn't be meritorious." R.43, Ex. 11 ¶ 4.

Several months later, Kearns informed Judge de la Torre that Mages was "contemplating stepping down from his position as a Group Supervisor and had expressed an interest in being re-assigned to the Senior Attorney-Adviser position." R.43, Ex. 4 ¶ 14. Mages subsequently was reassigned to the Senior Attorney-Adviser position in September 2006.

## B. District Court Proceedings

After exhausting his administrative remedies, Mr. Poer instituted this action in which he claimed that the SSA had failed to promote him to the open Senior Attorney-Adviser position in retaliation for his prior testimony against Kearns. In response to the SSA's motion for summary judgment, Mr. Poer argued that there was sufficient circumstantial evidence from which a jury could conclude that Kearns's discriminatory animus infected the promotion process. The district court disagreed.

The court first noted that Mr. Poer had "concede[d] that there is no evidence that any of the named SSA decisionmakers—Hearing Office Chief ALJ de la Torre, Regional Chief ALJ Lillios, or Regional Management Officer McGinley—knew that he had previously engaged in any protected activity." *Poer v. Astrue*, No. 1:07-cv-1425,

2009 WL 2905480, at *7 (S.D. Ind. Sept. 8, 2009). Although such a concession usually was fatal to a retaliation claim, Mr. Poer also had contended "that Mr. Kearns, although not one of the ultimate decisionmakers, had knowledge of his (Mr. Poer's) protected activity and unlawfully influenced the decision to cancel the job announcement which prevented his selection for the position of Senior Attorney-Advisor." *Id.* The court acknowledged that, "[w]hen a supervisor with an allegedly retaliatory motive is involved in the employment decision, 'that retaliatory motive, in some circumstances, may be imputed to the company.'" *Id.* (quoting *Dorsey v. Morgan Stanley*, 507 F.3d 624, 628 (7th Cir. 2007)). However, the court continued, "to impute a non-decisionmaker's allegedly improper motive to the employer, a plaintiff must demonstrate that the non-decisionmaker significantly influenced the employer's decision, 'either by withholding relevant information or providing false information.'" *Id.* (quoting *Dorsey*, 507 F.3d at 628). The court determined that Mr. Poer had not come forth with sufficient evidence of Kearns's involvement in the hiring process "so as to taint the process to Mr. Poer's detriment." *Id.* at *8. The district court noted that,

> [a]dmittedly, the evidence does show that Mr. Kearns supplied Judge de la Torre with inaccurate information regarding the candidates' then current employment locations, erroneously telling her that two of the three applicants worked outside of Region V. . . .
>
> Nonetheless, this misinformation was neither crucial nor determinative in the decision to cancel

the job vacancy posting. Judge de la Torre and Mr. McGinley testified that the cancellation decision was made based on budgetary constraints: in their judgment, ODAR would not have approved relocation expenses for two of the three candidates and, in addition, Judge de la Torre did not believe that a hiring decision should be made on the basis of there being only one candidate remaining by process of elimination of the other two. The undisputed facts establish both that out-of-region as well as out-of-state candidates would have required payment by ODAR of relocation expenses, which, at the time, were being approved only for positions that were deemed urgent and critical, which was not the case with the Senior Attorney-Advisor position. Therefore, although Mr. Kearns's statement regarding the number of candidates located outside of Region V was in error, it has not been shown to have affected the cancellation decision, since two of the three applicants would still have required payment of relocation expenses.

*Id.* Furthermore, the court noted, Judge de la Torre's "decision and recommendations were subsequently independently reviewed and approved by Mr. McGinley," who reached his conclusions without input from Kearns. *Id.* Thus, the court concluded, there simply was not any evidence of Kearns's allegedly retaliatory motive affecting the SSA's failure to promote Mr. Poer. *See id.*

Mr. Poer timely appealed.

## II

## DISCUSSION

We review a district court's grant of summary judgment de novo and construe all facts and reasonable inferences in favor of the nonmoving party. *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005). In reviewing the entry of summary judgment, "[i]t is not our role to evaluate the weight of the evidence, to judge the credibility of witnesses or to determine the ultimate truth of the matter, but simply to determine whether there exists a genuine issue of triable fact." *South v. Illinois Envtl. Prot. Agency*, 495 F.3d 747, 751 (7th Cir. 2007) (citations omitted). We may affirm a grant of summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Magin*, 420 F.3d at 686 (quoting Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Title VII prohibits an employer from "discriminat[ing] against" an employee because he has "opposed" practices that Title VII forbids or because he has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). Although a plaintiff may employ either the direct or indirect method to prove his claim of retaliation, *see Szymanski v. County of Cook*, 468 F.3d 1027, 1029 (7th Cir. 2006), Mr. Poer has proceeded only under the direct method.

The direct method is not synonymous with "direct evidence." *Metzger v. Illinois State Police*, 519 F.3d 677, 681 (7th Cir. 2008). "[T]his Court recently has clarified that . . . 'circumstantial evidence that is relevant and probative on any of the elements of a direct case of retaliation may be admitted and, if proven to the satisfaction of the trier of fact, support a case of retaliation.'" *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008) (quoting *Treadwell v. Office of Ill. Sec'y of State*, 455 F.3d 778, 781 (7th Cir. 2006)). Thus, "a plaintiff must show through either direct or circumstantial evidence that (1) she engaged in statutorily protected activity; (2) she suffered an adverse action taken by the employer; and (3) there was a causal connection between the two." *Metzger*, 519 F.3d at 681 (citing *Dorsey*, 507 F.3d at 627). If the plaintiff's evidence of retaliatory animus is contradicted,

> the case must be tried unless the defendant presents unrebutted evidence that it would have taken the adverse employment action against the plaintiff anyway, "in which event the defendant's retaliatory motive, even if unchallenged, was not a but-for cause of the plaintiff's harm."

*Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003) (quoting *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 642 (7th Cir. 2002)).

At this stage, the parties agree that Mr. Poer's testimony on behalf of the two other employees constituted statutorily protected activity. 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to

discriminate against any of his employees . . . because he has made a charge, *testified*, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." (emphasis added)). The SSA also does not contend that its failure to promote Mr. Poer to the Senior Attorney-Adviser position was not an adverse action taken by the employer. *See, e.g.*, *Volovsek v. Wisconsin Dep't of Agric., Trade & Consumer Prot.*, 344 F.3d 680, 688 (7th Cir. 2003). Thus, the critical issue that we must resolve is whether there is a causal connection between the protected activity and the adverse action.

**A.**

Mr. Poer recognizes that he faces an initial hurdle in establishing causation. "Under the direct method, the plaintiff must provide either direct evidence or circumstantial evidence that shows that the employer acted based on prohibited animus." *Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 888 (7th Cir. 2004). However, it is undisputed that Judge de la Torre, the individual responsible for making the decision not to fill the open Senior Attorney-Adviser position, did not know of Mr. Poer's protected activity at the time she made her decision. Nevertheless, "we have stated that the retaliatory motive of a 'nondecisionmaker' may be imputed to the company where the 'nondecisionmaker' influenced the employment decision by concealing relevant information from, or feeding false information to, the ultimate decisionmaker.'" *David v. Caterpillar, Inc.*, 324 F.3d 851,

861 (7th Cir. 2003) (citing *Wallace v. SMC Pneumatics, Inc.,*
103 F.3d 1394, 1400 (7th Cir. 1997)).

**1.**

Mr. Poer maintains that Kearns's retaliatory motive
may be imputed to the SSA because he influenced the
promotion decision by "feeding false information to"
Judge de la Torre. Although the evidence supports the
inference that Kearns provided false information to
Judge de la Torre, the unrebutted evidence also estab-
lishes that the false information did not affect Judge de la
Torre's decision not to fill the Senior Attorney-Adviser
position. As set forth in some detail previously, the false
information provided to Judge de la Torre was that the
other two applicants for the position were from outside
Region V. Under the budgetary restrictions at the time,
Region V could not make any hires from outside the
region. Thus, the result of Kearns providing the false
information was to limit the field of candidates to one,
Mr. Poer.

However, if Kearns had related accurate information
to Judge de la Torre, the result would have been the
same. With the exception of Mr. Poer, all of the
candidates lived outside Indianapolis and therefore
would have required relocation expenses. Both Judge
de la Torre and McGinley stated that, because of
budgetary restrictions, they believed that ODAR Head-
quarters would not have approved relocation expenses for
this position. Thus, the actual situation was the same
as that created by the false information: Because of bud-
getary constraints, Mr. Poer was the only candidate on

the certificate that could be hired, and Judge de la Torre required a greater number of candidates from which to choose.

In sum, regardless whether Kearns stated that the candidates were from outside the region (false) or outside of Indianapolis (true), Judge de la Torre still would have left the position open. Because the unrebutted evidence establishes that the position would have remained open regardless of Kearns's false information, Mr. Poer's retaliation claim must fail. *See Haywood*, 323 F.3d at 531 (stating that a case need not be presented to a jury when "the defendant presents unrebutted evidence that it would have taken the adverse employment action against the plaintiff anyway").

### 2.

Mr. Poer claims that there is other evidence of "influence" that a jury should be allowed to consider, namely, Kearns's handling of the well-qualified certificate. Specifically, Mr. Poer points to the facts that Kearns received the certificate, that he discussed it with Judge de la Torre and that he signed the certificate, as evidence of "influence." However, Kearns's job responsibilities included acting on Judge de la Torre's behalf with respect to the "management and operations of the Indianapolis ODAR, including planning, policy implementation, budget, personnel, and facilities." R.42 at 3. Furthermore, he "was responsible for tracking vacancy announcements and certificate packages." *Id.* The actions Mr. Poer points to

are completely consistent with Kearns's administrative responsibilities and do not suggest any untoward influence into Judge de la Torre's decisionmaking process.[5]

**B.**

Mr. Poer points to a myriad of other facts which, he believes, would allow a jury to conclude that he was the victim of retaliation. First, Mr. Poer argues that Judge de la Torre's rationale for not selecting him was completely subjective and, therefore, suspect. We disagree with both Mr. Poer's characterization of the evidence and the conclusion he draws from it. First, the undisputed evidence established that, "[w]hen the number of candi-

---

[5] Mr. Poer also argues that this "influence" can be seen by the fact that Kearns identified himself as the selecting official during a conversation with Mr. Poer. Although Kearns disputes this fact, we nevertheless must assume it is true in evaluating the Administration's motion for summary judgment. However, how Kearns portrayed himself to other employees is irrelevant to the question whether he actually had any influence over the decisionmaking process; there is no evidence that Judge de la Torre, who Mr. Poer identifies as "the actual selecting official," Appellant's Br. 16, knew that Kearns identified himself as the decisionmaker or, much less, condoned that action. *Cf.* Restatement (Third) of Agency § 3.03 (2006) (stating that "an agent's apparent authority originates with expressive conduct *by the principal* toward a third party through which the principal manifests assent to action by the agent with legal consequences for the principal" (emphasis added)).

dates listed on the certificate did not provide a suf-
ficient field of candidates from which to choose, it was a
common and longstanding practice of Region V ODAR
to cancel the announcement for lack of a sufficient field
of candidates." R.43, Ex. 3 ¶ 10. Thus, the decision not to
select from a field of one was not simply a whim
of Judge de la Torre's. Furthermore, although Judge
de la Torre was not required to cancel the announcement
under these circumstances, the fact that a management
decision has a subjective component does not render it
automatically suspect. *Cf. Dorsch v. L.B. Foster Co.*, 782
F.2d 1421, 1427 (7th Cir. 1986) ("A subjective qualifica-
tion assessment does not convert an otherwise
legitimate reason into an illegitimate one.").

Mr. Poer next argues that the jury could draw an infer-
ence of discrimination because, over time, the Admin-
istration has offered different explanations for not hiring
him. *See Zaccagnini v. Charles Levy Circulating Co.*, 338
F.3d 672, 678 (7th Cir. 2003) (holding that explanation
for termination raised for the first time in summary-
judgment reply brief "may be enough in and of itself to
preclude summary judgment . . . since a jury could rea-
sonably find that its failure to come forward with this
explanation earlier makes it not credible" and collecting
cases). Again, we do not believe that this is a reasonable
inference that the jury could draw from the evidence.
When Kearns signed the well-qualified certificate, he

stated, "No selection made—no FTEs available."[6] R.43, Ex. 8, Attach. 2.[7] Based on McGinley's and Judge de la Torre's statements with respect to budget restrictions,[8] this infor-

---

[6] This statement does not differ in any material respect from the statement that Kearns allegedly made to Mr. Poer on April 11, 2006: "I couldn't get FTEs (i.e., full time equivalent) for the other two people and that left you on the list and I couldn't select you because that wouldn't be meritorious." R.43, Ex. 11 ¶ 4.

[7] Mr. Poer maintains that the term FTE is inherently ambiguous, that it could mean either a "Full Time Equivalent" slot or an employee who fills one of those slots, and that, under the circumstances here, one cannot discern how Kearns is employing the term. Thus, according to Mr. Poer, we must conclude that "no FTEs available" means "no available candidates." Appellants Br. 24 & n.8. Again, we disagree. Given that "No selection made—no FTEs available" appeared on the certificate which listed three candidates, the logical interpretation is not that there was a lack of candidates available, but that there was a lack of slots available for transfer to the Indianapolis office.

[8] Mr. Poer also challenges the admissibility of McGinley's and Judge de la Torre's statements concerning the budget shortages that the Administration, specifically Region V, was operating under at the time. McGinley stated that, when he retired in March 2007, he had been with the SSA for thirty-three years and had been the Regional Management Officer for Region V for five and one-half years. In that position, his "duties consisted of acting on behalf of the Regional Chief Administrative Law Judge (RCALJ) in all matters regarding the manage-
(continued...)

mation is correct, but incomplete. Budget limitations prevented the transferring of full time equivalent slots from one region to the other; this restriction eliminated the hiring of the candidate from Iowa (outside the region), but not from Illinois (within the region). During administrative proceedings, neither McGinley nor Judge de la Torre contradicted this statement; however, they explained how, because of budget restrictions, not only were FTEs unavailable, but also relocation expenses were unavailable. The SSA—through its employees—always has asserted that, because of its budgetary woes, the certificate yielded an insufficient number of candidates from which to choose.[9]

---

[8] (...continued)

ment and operations of ODAR in Region V, including planning, policy implementation, field office operations, budget, personnel, and facilities." R.43, Ex. 3 ¶ 5. Thus, in his capacity as Regional Management Officer, McGinley had personal knowledge of the budget under which the region was operating and the concomitant limitations that the lack of funds placed on his ability to hire and transfer personnel.

[9] As a corollary to his last argument, Mr. Poer maintains that he is entitled to have a jury assess the credibility of the explanations given by Judge de la Torre and McGinley with respect to the SSA's budget restrictions and the implications of those restrictions on the decision to leave open the Senior Attorney-Adviser position. In support of this argument, Mr. Poer points to *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000). We do not believe that *Reeves* is helpful to Mr. Poer. *Reeves* held that, if the plaintiff establishes a

(continued...)

Finally, Mr. Poer faults Judge de la Torre for not at-
tempting to secure relocation expenses for the other
candidates or determining whether the other candidates
would waive relocation expenses. The fact that she
did not explore these alternatives, he suggests, under-
mines the validity of the SSA's reliance on budgetary
constraints. Although Mr. Poer believes that Judge
de la Torre should have taken more aggressive measures
in attempting to widen the field of possible candidates,
her failure to do so is not evidence of an illicit motive.
We frequently have stated that "[t]he fact that the em-
ployer was mistaken or based its decision on bad policy,
or even just plain stupidity, goes nowhere as evidence
that the proffered explanation is pretextual." *Essex v.
United Parcel Serv., Inc.*, 111 F.3d 1304, 1310 (7th Cir.
1997). Furthermore, far from being without justifica-
tion, here the record suggests that Judge de la Torre had
sound reasons for her actions. Requesting relocation
expenses for the other two candidates simply would have

---

[9] (...continued)
prima facie case of discrimination under the indirect method
*and* comes forward with evidence that the employer's proffered
reason for terminating employment is false, that is sufficient
evidence from which a jury may infer a discriminatory intent.
*See id.* at 145-47. Here, Mr. Poer has not proceeded under
the indirect method and, therefore, has not established a prima
facie case of retaliation. Moreover, Mr. Poer has not set
forth evidence from which a jury could conclude that
Judge de la Torre's explanation for not filling the Senior
Attorney-Adviser position was false.

wasted administrative time and effort. Indeed, McGinley stated that, even if requested by Judge de la Torre, he "would not have . . . asked Headquarters for relocation expenses for the Indianapolis senior attorney advisor position because [he] knew that [his] request would have been denied." R.43, Ex. 3 ¶ 21. Furthermore, McGinley explained that it would have been "extremely inappropriate" to request that a candidate "pay for his/her own relocation expenses," and, even if the candidate agreed, McGinley was unsure if such an agreement could be enforced. *Id.*

The unrebutted evidence establishes that, during the time that the well-qualified certificate was effective, the Administration was operating with severe budget limitations that impacted Region V's ability to bring in FTEs from other regions and its ability to secure relocation expenses for individuals transferring within the region. As a result, the individuals listed on the certificate other than Mr. Poer could not be considered. Judge de la Torre, consistent with long-standing Region V practice, opted not to fill the position from such a limited field. The SSA, therefore, was entitled to summary judgment on Mr. Poer's retaliation claim.

## Conclusion

For the reasons set forth in the foregoing opinion, the judgment of the district court is affirmed.

AFFIRMED