NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 8, 2011
Decided January 20, 2012

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 11-1958

| | |
|---|---|
| ANTHONY PALERMO, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | No. 08-cv-4623 |
| HILLARY RODHAM CLINTON, Secretary, | |
| United States Department of State, | Joan B. Gottschall, |
| *Defendant-Appellee.* | *Judge.* |

**O R D E R**

Anthony Palermo, a white man, sued his longtime employer, the U.S. Department of State, alleging that he was denied a pay increase in retaliation for prior allegations of discrimination and because of his race and gender. The district court granted summary judgment to the government, and Palermo appeals. We affirm the judgment.

Because this appeal comes to us from a grant of summary judgment, we view the evidence in the light most favorable to Palermo, the nonmoving party. *Egan v. Freedom Bank*, 659 F.3d 639, 640 (7th Cir. 2011). The following narrative recounts the facts of the case according to that standard; we do not vouch for its objective truth.

Palermo has worked in the State Department's Chicago regional passport office since 1995. He began at the GS-5 pay grade and over the next two years worked his way up to the GS-9 level. In 2003 Palermo filed an Equal Employment Opportunity ("EEO") complaint against supervisors Brittany Williams and Terry Green, both black women, alleging gender and race discrimination. To settle that complaint, the government promoted Palermo to a GS-11 position. Palermo filed another EEO complaint in 2004 after being passed over for a promotion. That complaint turned into a federal lawsuit, which the government settled in 2005 by making Palermo a passport operations officer, another GS-11 position. Florence Fultz, a State Department official working in Washington, opposed the settlement because she believed Palermo's suit lacked merit.

About a year after starting his new job, Palermo requested a "desk audit," a process by which an employee challenges the pay grade of his position. Palermo believed that his duties warranted the GS-12 pay earned by operations officers in three of the other regional offices, not the GS-11 wage paid to the majority of those with his title. His supervisors forwarded his request to State Department headquarters in Washington, D.C., which decides how to classify jobs in the regional offices.

Herbert Casey, a black human-resources official with the Department, conducted the audit. Casey asked Palermo for a list of his job duties not captured in his job description; Palermo obliged. Casey verified the list with Palermo's supervisors, Williams and Green, who confirmed that he performed the tasks listed but told Casey he did some of them only sparingly. Casey also consulted with an outside expert in pay-grade classification, who said the position was classified accurately at GS-11. After gathering all the information, Casey determined that Palermo's position was classified properly because his additional tasks either were insufficiently complex or performed too infrequently to merit a grade increase.

As Casey was conducting the audit, Palermo and Williams feuded over several work-related issues. They argued about whether Palermo was denied a promotion because of discrimination; Williams later emailed Casey and others that Palermo's allegation, in keeping with his past pattern of complaints, "does not come as a complete surprise." Palermo also complained about Williams's directive that he stop bringing passports to the will-call window; in an e-mail to Casey after receiving Palermo's message, Williams stated, "This is beyond out of control." Later Williams and Green met with Palermo to discuss sexual-harassment allegations leveled against him by female co-workers; according to Palermo, Williams mentioned Palermo's prior EEO complaints during the meeting. Finally, Palermo complained to Williams about his workload, then accused her of retaliating when she asked him to send her a list of his duties so she could help him manage his work.

Palermo initiated another EEO complaint, alleging that the sexual-harassment meeting constituted gender- and race-based discrimination and retaliation for prior EEO complaints. Williams informed Casey and Fultz of the complaint on October 12; 11 days later, Casey sent Palermo a letter notifying him that his position would not be reclassified to GS-12. Palermo then filed this suit claiming retaliation and discrimination based on race and gender, in violation of Title VII.

The district court granted summary judgment for the government on both claims. Regarding the retaliation claim, the judge assumed for the sake of argument that the audit result constituted an adverse employment action (one element of the prima facie case under the direct method of proof) but concluded that Palermo had not established another element—a causal connection between the EEO complaints and Casey's decision. The judge also rejected Palermo's "cat's paw" argument that Williams and Fultz retaliated against him by sabotaging the desk audit. Regarding the discrimination claim, the judge concluded that Palermo failed to make out a prima facie case under the indirect method of proof because he did not identify any similarly situated employees of a different race or gender who had been treated more favorably.

On appeal Palermo devotes almost his entire argument to challenging the district court's ruling on his retaliation claim. Before the district court, Palermo pursued this claim under only the direct method of proof, so to make out a prima facie case of retaliation, he had to provide sufficient evidence that (1) he undertook a protected activity; (2) he suffered an adverse action; and (3) a causal linkage exists between the activity and the adverse action. *See Leitgen v. Franciscan Skemp Healthcare, Inc.,* 630 F.3d 668, 673 (7th Cir. 2011). Palermo challenges the district court's conclusion that he did not produce enough evidence of a causal connection. The government defends the district court's conclusion on the lack of a causal link but also contends that the court wrongly assumed that Casey's refusal to reclassify Palermo's position constituted an adverse action. According to the government, desk audits occur too infrequently for their outcomes to dissuade a reasonable worker from undertaking a protected activity. *See Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The government likens the denial of a grade increase after an audit to the denial of a bonus, which, we have held, does not constitute an adverse employment action. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008). Palermo counters that the audit result here more closely resembles the denial of a raise or a promotion, both of which qualify as adverse employment actions. *See Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 559 (7th Cir. 2007) (raise); *Jackson v. Cnty. of Racine*, 474 F.3d 493, 501 (7th Cir. 2007) (promotion).

We need not resolve this issue. Assuming the refusal to reclassify Palermo's position was an adverse employment action, his prima facie case of retaliation fails for lack of a causal connection between his EEO complaints and the audit result. Palermo concedes that

he presented no direct evidence of retaliation but argues that he produced sufficient circumstantial evidence to allow a jury to infer a retaliatory motive. *See Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 672 (7th Cir. 2011); *Silverman v. Bd. of Educ. of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011). Palermo first points to the proximity of the desk-audit decision to his discrimination complaint—the decision came only 11 days after Casey learned of the latest EEO complaint—and claims this timing permits an inference of retaliation. But as the district court noted, suspicious timing alone generally is not enough to create a triable issue in a retaliation claim. *See Davis*, 651 F.3d at 674–75 (concluding that period of three to fourteen days between action and alleged retaliation was insufficient by itself to allow for inference of retaliation); *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 629–30 (7th Cir. 2001) (one week). To meet his burden, Palermo must point to additional circumstantial evidence demonstrating that Casey retaliated against him for the EEO complaints. *See Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 758–59 (7th Cir. 2006). He complains about the audit results and Casey's letter detailing his findings, but these complaints—even if justified—do not advance his retaliation claim because they do not give rise to an inference that Casey acted out of retaliatory animus. *See Poer v. Astrue*, 606 F.3d 433, 442–43 (7th Cir. 2010).

Palermo also challenges the district court's ruling on his "cat's paw" argument. The term "cat's paw" refers to an impartial decisionmaker whom a biased employee uses to achieve discriminatory or retaliatory ends. *See Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 379 (7th Cir. 2011). Palermo contends that he presented evidence that Fultz and Williams used Casey as their "cat's paw," torpedoing his desk audit in retaliation for his prior EEO complaints. To succeed under the "cat's paw" theory of employer liability, Palermo had to show that Williams or Fultz performed an act motivated by retaliation for his EEO complaints, that the act was intended to influence the desk-audit outcome, and that the act proximately caused Casey's decision not to increase Palermo's grade. *See Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1194 (2011).

But as the district court ruled, Palermo's evidence does not show that Fultz or Williams retaliated against him for his EEO complaints by sabotaging his chances in the desk audit. First, the evidence does not suggest that Fultz took any action to influence the audit. She initially expressed reservations about the audit out of fear that Palermo's position would be *downgraded* but later told Casey she did not oppose his moving forward with his review. She had no further involvement in the audit. And even had she been more involved, the only evidence that she was motivated to retaliate against Palermo was her opposition to settling one of his prior complaints more than a year before she learned of the audit, a gap too large to infer a nefarious motive. *See Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 721 (7th Cir. 2008).

Williams, by contrast, did play at least a small role in the audit by providing Casey with information about the tasks Palermo regularly performed. Palermo contends that some of this information was inaccurate, and he argues that Williams misled Casey about his job duties in retaliation for his EEO complaints against her. For evidence of Williams's motivation, he points to her comments to Casey about her frustration with his behavior, her alleged reference during a meeting to one of his EEO complaints, and her request that he create a list of his duties. Williams's remarks show only that she was aware of Palermo's EEO activity, not that it motivated her statements to Casey, and none of her isolated comments bear the necessary relationship to the adverse employment action to allow for an inference of retaliation. *See Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 775 (7th Cir. 2008); *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007). Nor does her request that Palermo provide a list of his work tasks reflect retaliatory animus, particularly when he complained about having too much work.

Regarding the discrimination claim, Palermo argues briefly that the district court erred in requiring him to provide evidence of similarly situated employees who did not suffer retaliation. He contends that he should not have to identify comparators because, he says, he was the only employee who was mistreated. But because Palermo proceeded on this claim under only the indirect method of proof, the district court's analysis was correct. *See Benuzzi v. Bd. of Educ. of Chi.*, 647 F.3d 652, 662 (7th Cir. 2011); *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 730 (7th Cir. 2011).

AFFIRMED.