**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 27, 2017[*]
Decided March 29, 2017

**Before**

RICHARD A. POSNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 16-3891

| | |
|---|---|
| TEAWANA EPPINGER, | Appeal from the |
|     *Plaintiff-Appellant*, | United States District Court |
| | for the Central District of Illinois. |
|     *v*. | |
| | No. 14-cv-1492 |
| CATERPILLAR INC., | |
| CHRIS LOWERY, and | Michael M. Mihm, |
| MIKE DENNIS, | *Judge*. |
|     *Defendants-Appellees*. | |

## O R D E R

Teawana Eppinger claimed that Caterpillar Inc. and two of its managers fired her because she is black and had used medical leave, and in retaliation for complaining about discrimination. The district court granted summary judgment for the defendants, reasoning that Eppinger lacked evidence linking her discharge to racial animus, her use of medical leave, or retaliation for complaints of discrimination. On appeal Eppinger

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

argues that the defendants and court misunderstood the substance of her claims. We affirm the judgment.

Except as noted, the evidence at summary judgment was undisputed, and we recount it in the light most favorable to Eppinger. *See Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 340 (7th Cir. 2016). Eppinger had worked at Caterpillar for more than eight years when the company discharged her, citing recurring attendance issues. Caterpillar handles unexcused absences through a 6-step process, which advances from two "coaching sessions" conducted by the employee's supervisor to a written warning and "attendance verification," then two progressive suspensions, and ultimately indefinite suspension or discharge. Eppinger's supervisor, defendant Chris Lowery, initiated the first step in November 2011 after Eppinger had been late twice in the same week, the first time almost 3 hours and the second, 30 minutes. Two months later, in January 2012, Eppinger was late again, and Lowery counted that tardy arrival toward the second step. (Lowery avers that he conducted coaching sessions after both instances, but Eppinger disputes this and also states that Lowery was not her supervisor until December 2011.) After she next arrived more than 90 minutes late in April, Lowery issued a third-step written warning and placed Eppinger on "attendance verification." This required her to provide, upon her return from any day when she was late or absent, documentation "dated the date of the absence" explaining why she had been unable to work.

Two weeks later Eppinger missed four consecutive days of work beginning on May 14, 2012. She previously had been approved for 480 hours of leave under the Family and Medical Leave Act of 1993. *See* 29 U.S.C. § 2612. Those preauthorized hours required no documentation, and to use them, Eppinger needed only to call an automated hotline and select "FMLA" from the menu as the reason for her absence. For May 14 Eppinger used vacation time. For May 15 she called the hotline to use FMLA leave. But for May 16 and 17 she did not use either of those options but instead just stayed home without calling in. When she returned to work, she gave Lowery a note from her doctor dated May 16 saying she would be absent "May 18, 2012 to May 18, 2012." Lowery caught the obvious error and asked Eppinger for a note excusing the May 16 and 17 absences, but Eppinger later said that her doctor had refused to sign a backdated note for those dates. Lowery thus counted the two days together as a fourth absence and, as provided in the attendance policy, suspended Eppinger for three days. (Eppinger speculates that she was suspended because she did not document her use of FMLA leave on May 15, but Lowery's contemporaneous report and later affidavit—both undisputed—confirm that he asked her to document only the May 16 and 17 absences.)

Two months later in July 2012, Eppinger telephoned 40 minutes before the start of a shift and told Lowery she would be late because her daughter had broken a window. Lowery agreed that Eppinger should "take care of the situation" before coming to work, but he disputes Eppinger's testimony that this response implied documentation wasn't necessary. Eppinger brought none when she arrived 90 minutes late, prompting Lowery to suspend her for 5 days—the fifth step.

Then in September 2012 Eppinger hit a forklift with the one she was driving. The ensuing shouting match with the other driver attracted Lowery's attention, and he asked both employees to take a breathalyzer. Eppinger failed. Caterpillar told her she was fired for violating its drug and alcohol policy, but after she filed a grievance, the company reinstated her under a "Last Chance Agreement" requiring that she attend substance-abuse counseling and follow all company policies.

When she returned to work, Eppinger filed a charge with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission accusing Caterpillar of racial discrimination. When she first was suspended in May 2012, Eppinger alleged, Caterpillar had refused to accept her doctor's note even though, she said, the company usually did not question or refuse medical documentation for employees of other races. And when she was suspended again in July 2012, Eppinger asserted, she had told Lowery she would be late to work and yet was "summarily walked out of the plant," a procedure allegedly not used with employees of other races. She also accused Lowery of asking her to take the breathalyzer without cause and insisted that only black employees are subject to "unwarranted" tests. Lowery had initiated the breathalyzer, she thought, to retaliate for previously notifying Human Resources about past incidents of racial discrimination.

That charge of discrimination was still under investigation when Eppinger was again late to work five months later. She did not give Caterpillar any documentation to explain her tardiness, and because this episode counted as Eppinger's sixth violation of the attendance policy, she was suspended indefinitely. Defendant Mike Dennis, the company's Labor Relations Manager, reviewed Eppinger's circumstances. He noted that she had cancelled two and missed another of the counseling sessions required by her Last Chance Agreement (so far she had completed 9 of the program's 20 hours). After input from a union representative, Dennis informed Eppinger that she was being discharged for attendance violations.

Eppinger sued. In her form complaint, she checked boxes indicating that Caterpillar, Lowery, and Dennis had discriminated against her because of her race in

violation of Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. § 2000e–2, and for using FMLA leave, *see* 29 U.S.C. § 2615. She also accused the defendants of retaliating for asserting her rights. (Lowery and Dennis were improperly named as defendants under Title VII because an employer's agents cannot be individually liable. *See Passananti v. Cook County*, 689 F.3d 655, 677 (7th Cir. 2012). But the FMLA's definition of "employer" is broader than that of Title VII and encompasses some individual liability. *See* 29 U.S.C. § 2611(4)(A)(ii)(I) (defining "employer" to include persons acting in the employer's interest); *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 422 (2d Cir. 2016) (observing that several circuits have adopted an "economic reality test" for evaluating an individual supervisor's potential liability under FMLA); *see also Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 610 n.2 (7th Cir. 2001) (implying that FMLA liability for individuals is possible).)

In granting summary judgment, the district court concluded that Eppinger had not provided evidence from which a jury could find that her firing was motivated by racial prejudice. The court reasoned that Eppinger's failure to meet Caterpillar's legitimate employment expectations was undisputed and that she had conceded her inability to name any coworkers with a comparable disciplinary history who had been treated more favorably. As to the FMLA, the court continued, Eppinger did not even allege that she was denied leave for any day she had requested it and thus could not establish that the defendants interfered with her benefits. The court also observed that she did not dispute the inability of Lowery and Dennis to deny use of FMLA leave because that leave was preapproved.

Eppinger now contends that the district court misunderstood her lawsuit and ignored claims that she was fired in violation of her employment contract and in retaliation for "exercising her rights under Title VII of the Civil Rights Act of 1964 and the Family and Medical Leave Act." Indeed, Eppinger insists, she never claimed that "she was racial[ly] discriminated against and denied FMLA rights," and she does not contest the district court's handling of those claims. But the district court did recognize, and analyze at length, Eppinger's claims that the defendants retaliated against her.

A plaintiff may show retaliation in violation of Title VII by presenting evidence that statutorily protected activity caused her employer to take materially adverse action. *Burton v. Bd. of Regents of the Univ. of Wis. Sys.*, No. 16-2982, 2017 WL 1032628, at *3 (7th Cir. Mar. 17, 2017); *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 687 (7th Cir. 2010). The court concluded that Eppinger's retaliation claim lacks evidentiary support from which a jury could find a causal connection between her discharge and the administrative

complaint she lodged with the EEOC and Illinois Department of Human Rights: Eppinger had incurred five documented attendance violations before she filed that charge of discrimination, and ultimately she was not fired until after incurring a sixth unexcused absence. And, the court continued, there was nothing suspicious about the timing of her discharge because nearly five months had passed since she filed the administrative complaint. Moreover, the court added, Eppinger's discharge could not raise an inference of retaliation because she did not point to other employees with comparable attendance issues who kept their jobs. *See Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012); *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002).

The district court also analyzed Eppinger's claim that she suffered reprisal for using FMLA leave. But the court concluded that this claim must fail because Eppinger lacks evidence that she was disciplined for missing May 15, 2012, the only day she used FMLA leave. That Eppinger was disciplined for her unexcused absences on May 16 and 17, not the missed day on May 15, is undisputed. Since Eppinger had offered no other evidence to support her claim of FMLA retaliation, the court granted summary judgment for the defendants.

Eppinger does not contest the substance of the district court's reasoning; rather, she simply presses the untenable argument that the court ignored these claims and thus she has waived any appellate claim. *See O'Neal v. City of Chicago*, 588 F.3d 406, 409 (7th Cir. 2009) (explaining that arguments not raised on appeal are waived). And to the extent that Eppinger asserts that her employment contract was breached when she was fired, even if a contract claim could have been brought under the supplemental jurisdiction, Eppinger did not litigate that claim in the district court. *See Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 841 (7th Cir. 2010) ("It is well-settled that a party may not raise an issue for the first time on appeal."); *Kyles v. Morton High Sch.*, 144 F.3d 448, 454 (7th Cir. 1998) (same).

We have reviewed Eppinger's remaining arguments and none has merit.

AFFIRMED.