

**FILED**

Apr 28 2017, 9:13 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Robert C. Mills
Evansville, Indiana

ATTORNEYS FOR APPELLEES

Curtis T. Hill, Jr.
Attorney General of Indiana

Andrea E. Rahman
Matthew Elliott
Deputy Attorneys General
Indianapolis, Indiana

I N  T H E
# COURT OF APPEALS OF INDIANA

Robert C. Mills,

*Appellant-Plaintiff,*

v.

Indiana Department of Child Services, Shirley Starks, Kristen L. Sparks, Melanie Reising, and Elizabeth Herrmann,

*Appellees-Defendants*

April 28, 2017

Court of Appeals Case No.
82A01-1606-PL-1482

Appeal from the Vanderburgh Superior Court

The Honorable Leslie C. Shively, Judge

Trial Court Cause No.
82D01-1411-PL-5329

**Vaidik, Chief Judge.**

# Case Summary

Robert Mills, pro se, brought suit against the Indiana Department of Child Services (DCS) and several of its employees for sex and age discrimination under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act (ADEA), and the Equal Protection Clause of the Fourteenth Amendment (via 42 U.S.C. § 1983). He also claimed that DCS violated Title VII's anti-retaliation provision by refusing to interview him for open positions after he filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC).

DCS moved for and won a judgment on the pleadings on all of Mills's claims against its employees. That ruling left standing only three of Mills's claims— sex and age discrimination and retaliation by DCS. DCS was granted summary judgment on these remaining claims. Mills now appeals the trial court's rulings. We affirm.

# Facts and Procedural History

Mills was employed by DCS as a caseworker from approximately 1975 to 1980 and again from 1984 to 1988. In 1988, he changed positions and worked for DCS as a Child Care Center Licensing Consultant. He held this position until he resigned in 2007. Mills then began working as a Manager of Child Development Services for Evansville Head Start. In 2010, at the age of 62, he

retired. A few years later, Mills decided that he needed to increase his monthly pension payments and decided to resume working.

[4] In October 2013, Mills applied for a Family Case Manager position with DCS. At that time, DCS's applicant screening process was multi-step and included a two-part interview. Mills was selected for an interview and met with Melanie Reising and Elizabeth Herrmann, supervisors at DCS. During the interview, Mills was asked why he wanted to come out of retirement, and he stated that he wanted "to work for the State for 2-3 years to solidify my retirement income." Appellant's App. Vol. II p. 157. After the interview concluded, Herrmann sent feedback to Shirley Starks, the local director for DCS, and recommended that Mills not move on in the interview process. Herrmann noted that Mills was hard to engage in conversation, was unable to answer questions with specific examples of using essential skills for the job, was rigid on his views of traditional and non-traditional families—his body language suggested that he was uncomfortable with non-traditional families—and provided generalized answers to questions about child abuse or neglect. *Id.* at 159. DCS ultimately hired another male applicant.

[5] Three months later, in January 2014, another Family Case Manager position became available, and Mills interviewed for a second time with Reising and Herrmann. Again, Mills restated that his desire for obtaining a position with DCS was to work for two to three years to increase his pension. After the interview, Reising and Herrmann had the same concerns about Mills that they

had in October and recommended that he not move on in the interview process. DCS hired a sixty-three-year-old female to fill the position.

[6] In April 2014, Mills filed charges against DCS with the EEOC, alleging sex and age discrimination. After completing its investigation, the EEOC issued Mills a Notice of Right to Sue on August 15, and it took no further action. On August 27 and October 30, Mills submitted additional applications for Family Case Manager positions but was not interviewed for either opening. On November 11, Mills, pro se, filed this lawsuit against DCS, Starks, Herrmann, Reising, Human Resources Generalist Kristen Sparks, DCS Director Mary Beth Bonaventura, Doe I, Doe II, and Doe III. In his initial complaint, Mills alleged that he was discriminated against by DCS based on his sex and age and retaliated against for filing a charge with the EEOC; he raised claims under Title VII of the Civil Rights Act of 1964, the ADEA, and Indiana Code chapter 22-9-2 (Indiana Age Discrimination Act (IADA)).[1] Mills sought relief from DCS and each employee in her individual and official capacity. After filing suit, Mills submitted additional applications with DCS in February 2015 and May 2015; DCS did not interview him for either of these positions.

[7] In May 2015, DCS moved for judgment on the pleadings on many of Mills's claims. DCS argued, among other things, that the individual defendants were

---

[1] Mills also contends that he brought suit under Indiana Code chapter 22-9-1 (Civil Rights Enforcement), but that chapter deals with the Indiana Civil Rights Commission's creation, authority to investigate discrimination claims, and ability to impose remedial sanctions.

not "employers" as defined by the statutes under which Mills sought relief; DCS was subject to the ADEA and was therefore statutorily excluded from the definition of employer under the IADA; and Mills's claim for monetary damages under the ADEA was barred by the State's sovereign immunity and the only relief that he could receive was injunctive. *Id.* at 26-28. Mills responded to DCS's motion by seeking leave to file an amended complaint, which he was granted.[2] In his amended complaint, Mills no longer named defendants Bonaventura, Doe I, Doe II, and Doe III, and he dropped the IADA claim. *Id.* at 38-39, 45-52. Mills's amended complaint added a claim under § 1983 for violations of his rights under the Equal Protection Clause. Based on these changes, DCS submitted a supplement to its motion for judgment on the pleadings and argued that DCS is an agency, not a person, under § 1983 and only individuals can be sued under § 1983; and that Mills did not make any factual allegation regarding how the individual defendants violated his constitutional rights under § 1983.

---

[2] Mills made multiple additional requests to amend his complaint, but the trial court did not allow him to do so. Mills contends that the trial court erred in this respect and that he was entitled to notice from the court of any deficiencies in his complaint. The trial court has broad discretion to permit or deny motions to amend, and we review the trial court's decision only for an abuse of that discretion. *First of Am. Bank, N.A. v. Norwest Bank, Ind. N.A.*, 765 N.E.2d 149, 152 (Ind. Ct. App. 2002), *trans. denied.* In his argument, Mills fails to inform us what he would amend in his complaint and how that would cure any defects, and we will not speculate on the matter. Mills also cites to only Ninth Circuit cases in support of his contention that the trial court was required to provide him with notice of any deficiencies. The Ninth Circuit's opinions are not binding in Indiana, and Mills has not cited to any binding authority that reaches the same conclusion. We decline to extend the Ninth Circuit's rule to Indiana and conclude that the trial court did not abuse its discretion in not allowing Mills to further amend his complaint.

[8] While DCS's motion was pending, Mills filed two motions to compel discovery. The trial court denied those motions and granted DCS's motion for judgment on the pleadings. All individual defendants were dismissed from the suit, and Mills was left with three claims against DCS: sex discrimination under Title VII, age discrimination under the ADEA, and retaliation under Title VII for filing a charge with the EEOC.

[9] DCS then moved for summary judgment on the three remaining claims. Mills opposed the motion and filed a personal affidavit in support of his argument. The court granted DCS's motion, and Mills moved to correct error. The trial court denied the motion.

[10] Mills, still proceeding pro se, now appeals.[3]

---

[3] Mills asks us to strike DCS's appellate brief and appendix. DCS filed a belated motion for a second extension of time to file its brief and appendix, claiming that it did not receive notice that this Court had granted its first motion for extension of time and that counsel had failed to properly calendar the filing due date. Our motions panel granted DCS's belated motion, and Mills asks us to reconsider the decision. Mills can challenge a motions panel's decision, but we will decline to reconsider the issue "in the absence of clear authority establishing that the [motions panel] erred as a matter of law." *Cincinnati Ins. Co. v. Young*, 852 N.E.2d 8, 12 (Ind. Ct. App. 2006), *trans. denied*. To support his argument, Mills cites to an unpublished case, cases decided under former Supreme Court Rule 2-2, and a case that discusses an appellant's failure to include a verbatim trial court order. Mills failed to show that the motions panel erred as a matter of law in allowing DCS to file a belated brief and appendix. Furthermore, we prefer to decide cases on their merits whenever possible. *Hughes v. King*, 808 N.E.2d 146, 147 (Ind. Ct. App. 2004). We encourage counsel for DCS to reevaluate her calendaring system but decline Mills's invitation to overturn our motions panel's ruling.

# Discussion and Decision

[11] Mills contends that the trial court erred by granting DCS's motion for judgment on the pleadings on some of his claims and by later granting its motion for summary judgment on his remaining claims.[4]

# I. Judgment on the Pleadings

[12] Mills argues that the trial court erred when it granted DCS's motion for judgment on the pleadings. We review the grant of a motion for judgment on the pleadings de novo. *Davis v. Edgewater Sys. for Balanced Living, Inc.*, 42 N.E.3d 524, 526 (Ind. Ct. App. 2015). A motion for judgment on the pleadings should be granted only "where it is clear from the face of the pleadings that one party is entitled to prevail as a matter of law." *ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195 (Ind. 2016).

[13] The trial court granted DCS judgment on the pleadings on all of Mills's claims against Starks, Sparks, Reising, and Herrmann (discrimination under Title VII, ADEA, and § 1983) and the claim for monetary relief under the ADEA. On

---

[4] Mills also contends that the trial court abused its discretion when it denied his motions to compel discovery from DCS. Mills states that he contacted DCS on multiple occasions to work out their discovery disputes and that DCS responded on multiple occasions that it would only comply "with a court order." Appellant's Br. p. 38. Mills does not provide any evidence to support this contention. He cites to his appendices for support, but these citations fail to provide us with any proof that these instances did in fact occur. Rather, these citations are to motions Mills made to the trial court, and his motions also fail to present any evidence to support his claim. Because Mills fails to cite to any evidence supporting his claim, this issue is waived. Ind. Appellate Rule 46(A)(8)(a).

appeal, Mills only challenges the court's ruling on his Title VII and § 1983 claims against Starks, Sparks, Reising, and Herrmann.

## A. Title VII

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against any individual because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). An employer is a "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person[.]" 42 U.S.C. § 2000e(b). The Seventh Circuit has stated that "a supervisor does not, in his individual capacity, fall within Title VII's definition of employer." *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995).

Mills acknowledges the Seventh Circuit's holding that a supervisor cannot be held individually liable as an employer under Title VII. Nevertheless, he argues that Starks, Sparks, Reising, and Herrmann—all of whom held a supervisory role within DCS—fall within the definition of employer because the courts have misinterpreted that definition. He contends that the plain language of the definition is clear and that the use of "and any agent" in the definition means

that DCS's employees, who act as agents of DCS, are included as employers.[5] Appellant's Br. pp. 32-36.

[16] The Seventh Circuit has expressly rejected this argument. *See Williams*, 72 F.3d at 554. "[T]he actual reason for the 'and any agent' language in the definition of 'employer' was to ensure that courts would impose *respondeat superior* liability upon employers for the acts of their agents." *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1281 (7th Cir. 1995) (citing *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir. 1994)). Finding no reason to depart from the Seventh Circuit's holding, we conclude that the trial court did not err when it disposed of the Title VII claims against Starks, Sparks, Reising, and Herrmann.

## B. § 1983

[17] Mills also argues that the trial court erred when it granted DCS's motion for judgment on the pleadings on his claims against Starks, Sparks, Reising, and Herrmann alleging sex and age discrimination under the Equal Protection Clause. Mills raises this argument under § 1983, which states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United

---

[5] Mills incorrectly compares the definition of employer under Title VII to the definition of employer under the Family Medical Leave Act (FMLA). As Mills later points out in his brief, the Seventh Circuit has relied on the differences in these definitions to hold supervisors liable under the FMLA but not Title VII. Appellant's Br. p. 33 ("The court relied on the differences in the definition of 'employer' between the statutes to impose liability upon the supervisor [under the FMLA].")'; *see also Eppinger v. Caterpillar, Inc.*, 2017 WL 1166877 at *3 (7th Cir. 2017) ("But the FMLA's definition of 'employer' is broader than that of Title VII and encompasses some individual liability.").

States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Stated another way, the statute "'authorizes suits to enforce individual rights under federal statutes as well as the Constitution' against state and local government officials." *Levin v. Madigan*, 692 F.3d 607, 611 (7th Cir. 2012) (quoting *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 119 (2005)).

[18] Defendants have historically challenged whether a plaintiff can raise sex and age discrimination claims under Title VII and the ADEA and simultaneously assert the same claims under § 1983. While the circuit courts are split on this issue, the Seventh Circuit has thoroughly analyzed these questions and concluded that these claims can be raised together. *See Levin*, 692 F.3d at 621-22 ("In light of our analysis of the ADEA and the relevant case law, and given these divergent rights and protections, we conclude that the ADEA is not the exclusive remedy for age discrimination in employment claims."); *Trigg v. Fort Wayne Cmty. Schs.*, 766 F.2d 299, 302 (7th Cir. 1985) ("[A] discharged state employee's right to sue under § 1983 for violations of the Equal Protection Clause was well established before the passage of Title VII, and the legislative history suggests that Congress intended that § 1983 would not be impliedly repealed in the employment discrimination context.").

[19] In Mills's case, the trial court granted DCS's motion for judgment on the pleadings and stated, "The Court further **FINDS** and **ORDERS** that

Defendants, Shirley Starks, Kristen L. Sparks, Melanie Reising and Elizabeth Herrmann, are granted judgment on the pleadings in their favor on all claims made by Plaintiff against them." Appellant's App. Vol. II p. 152 (emphases in original). The trial court provided no additional insight into how it reached this conclusion. Given that § 1983 permits Equal Protection Clause claims against individual government employees, that § 1983 claims can be brought simultaneously with Title VII and ADEA claims, and that the trial court failed to explain its ruling, we agree with Mills that the court erred when it disposed of his claims against Starks, Sparks, Reising, and Herrmann for allegedly violating his rights under the Equal Protection Clause.

[20] However, we find this error to be harmless. Harmless error occurs when, in light of all of the evidence in the case, the error is sufficiently minor so as not to affect the substantial rights of a party. Ind. Appellate Rule 66(A); *see also Kimbrough v. Anderson*, 55 N.E.3d 325, 336 (Ind. Ct. App. 2016), *trans. denied*. After winning its motion for judgment on the pleadings, DCS moved for summary judgment on the three remaining claims, and we have no reason to believe that DCS would not have also moved for summary judgment on the Equal Protection Clause claims had they survived the motion for judgment on the pleadings. Mills's claim that his rights under the Equal Protection Clause were violated is factually identical to his Title VII and ADEA claims, and, as discussed below, we conclude that the trial court properly granted summary judgment on those claims. Accordingly, this error did not affect Mills's substantial rights and was harmless.

# II. Summary Judgment

[21]   Mills also argues that the trial court erred when it granted DCS's motion for summary judgment on his claims for sex discrimination under Title VII, age discrimination under the ADEA, and retaliation under Title VII. We review a trial court's summary judgment decision de novo. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). All reasonable inferences are drawn in favor of the non-moving party. *Id.* Summary judgment is appropriate if there is "no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). If the moving party meets these two requirements, then the burden shifts to the non-moving party to "respond with **specifically** designated facts which establish the existence of a genuine issue for trial." *Hayden v. Paragon Steakhouse*, 731 N.E.2d 456, 457-58 (Ind. Ct. App. 2000) (emphasis added). We will only consider evidence that was specifically designated to the trial court. *Id.* at 458. "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Hughley*, 15 N.E.3d at 1003.

[22]   Mills contends that he presented fifty-two "relevant facts" to the trial court to challenge DCS's motion for summary judgment. Appellant's Br. p. 52; Appellant's Reply Br. p. 6. He argues that all of the facts "were of 'consequence' and 'would affect a person's decision-making process.'" Appellant's Br. p. 53. Mills, however, did not identify for the trial court or us

what these facts were, why they were genuine issues of **material** fact, or how they were in dispute. Additionally, Mills submitted over 1000 pages of exhibits to the trial court and made general citations to the exhibits in support of his argument, leaving the trial court to guess as to why the exhibit was relevant. On appeal, Mills still fails to specifically identify what the genuine issues of material fact are or why they are in dispute. We conclude that the trial court did not err when it determined that no genuine issue of material fact existed. We now address the second half of the summary-judgment standard: did DCS prove that it was entitled to judgment as a matter of law?[6]

## A. Sex Discrimination

[23] Title VII makes it unlawful for an employer to discriminate against any individual because of such individual's sex. 42 U.S.C. § 2000e-2(a)(1). Mills raises claims under both the disparate-treatment and disparate-impact theories of discrimination. Disparate-treatment claims require that the plaintiff "prove that the defendant had a discriminatory intent or motive." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986 (1988). To establish a prima facie case of disparate-treatment sex discrimination under Title VII, a plaintiff must use either the direct or indirect method of proof. *Ptasznik v. St. Joseph Hosp.*, 464

---

[6] Along with his brief opposing summary judgment, Mills filed a self-serving affidavit. He argues that this affidavit presents an alternative version of the facts and "alone is sufficient to defeat summary judgment." Appellant's Br. p. 51. Our Supreme Court has said that a "self-serving affidavit may only preclude summary judgment when it establishes that material **facts** are in dispute[.]" *AM Gen. LLC v. Armour*, 46 N.E.3d 436, 441 (Ind. 2015) (emphasis in original). Upon review of Mills's affidavit, we conclude that no genuine issue of material fact was raised.

F.3d 691, 695 (7th Cir. 2006). The direct method requires the plaintiff to produce "direct evidence, such as an 'outright admission' of discrimination" or produce "sufficient circumstantial evidence" that "point[s] directly to a discriminatory reason for the termination decision." *Id.* Mills does not raise an argument under the direct method of proof.

[24] Under the indirect method, a male plaintiff must prove: (1) background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against men or evidence that there is something "fishy" about the facts at hand; (2) he applied for, and was qualified for, an open position; (3) the employer rejected him for the position; and (4) the employer filled the position with an individual outside of the plaintiff's protected class, or the position remained vacant. *See Gore v. Ind. Univ.*, 416 F.3d 590, 592 (7th Cir. 2005); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Mills v. Health Care Srv. Corp.*, 171 F.3d 450, 457 (7th Cir. 1999). In the present case, Mills has failed to provide **any** evidence that DCS had a reason or inclination to discriminate invidiously against men or that something "fishy" surrounded the decisions not to hire him. Furthermore, after Mills's first interview, DCS hired a male applicant to fill the vacant position.[7] Mills has not established a disparate-treatment claim of sex discrimination.

---

[7] Had Mills satisfied the prima facie requirements, DCS provided several legitimate, non-discriminatory reasons for why it chose not to hire Mills—he wanted to work for only two to three years, he was hard to engage in conversation, he was unable to answer questions with specific examples to illustrate the use of essential skills, he was rigid on his views of traditional and non-traditional families, and he provided

Our analysis of Mills's Title VII claim, however, does not stop with disparate-treatment discrimination. Mills also raises an additional argument that DCS's hiring practices have a disparate impact on male applicants. In other words, Mills argues that DCS did not intentionally discriminate against male applicants, but it nevertheless violated Title VII because a "facially neutral practice" of DCS is discriminatory in its operation. *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971). To prevail on this claim, the plaintiff is responsible for "isolating and identifying the **specific** employment practices that are allegedly responsible for any observed statistical disparities." *Smith v. City of Jackson, Miss.*, 544 U.S. 238, 241 (2005) (emphasis in original) (quoting *Watson*, 487 U.S. at 994). Mills fails to identify a specific employment practice that is responsible for the disparate impact on male applicants. Mills states, "The **entire** DCS interview process makes discrimination happen." Appellant's Br. p. 56 (emphasis added). This statement does not specifically narrow down what Mills is challenging, as DCS's interview process is multi-step. *See* Appellee's Br. p. 14. Accordingly, we conclude that Mills has failed to prove disparate-treatment or disparate-impact discrimination, and DCS was entitled to judgment as a matter of law on Mills's sex discrimination claim.

---

generalized answers to questions about child abuse or neglect. Additionally, Mills has not proven that DCS's proffered reasons for not hiring him were pretext. Accordingly, we would still affirm the trial court's ruling.

# B. Age Discrimination

[26] The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). An individual must be at least forty years old for the ADEA to protect him from discrimination. 29 U.S.C. § 631(a). Similar to a Title VII claim, a plaintiff alleging age discrimination must either present direct evidence of discrimination or prevail under the indirect method. *Roberts v. Columbia Coll. Chi.*, 821 F.3d 855, 865 (7th Cir. 2016). The plaintiff must also prove that his age was the "'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).

[27] To prevail under the direct method, Mills must show a direct admission by DCS that he was not hired because of his age, or he must show a "convincing mosaic of circumstantial evidence that points directly to a discriminatory reason for [DCS's] action." *Roberts*, 821 F.3d at 865 (quotations omitted). Mills argues that the question, "Why do you want to come out of retirement?" is "an obvious age related question." Appellant's Br. pp. 23-24. DCS contends that this question does not automatically correlate to age discrimination. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993) (holding that age and years of service with an employer are "analytically distinct" and that "an employer can take into account one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'"). Herrmann

and Reising stated that they asked the question to understand why Mills wanted to return to a job and agency that he had previously left. We agree with DCS that the question was innocuous and "analytically distinct" from asking about Mills's age; it served the purpose to understand why Mills sought reemployment with the agency.

[28] Mills offers additional evidence of direct age discrimination by DCS. During his interview, Mills told Reising and Herrmann that he planned "to work for the State for 2-3 years to solidify my retirement income." Appellee's Br. p. 56; Appellant's App. Vol. II p. 157. The interviewers then told Starks that they had concerns about Mills's motives for returning to work for DCS. In an email to Starks, Reising stated that Mills "wants the job for the money and the retirement" and that these motives "don't fit our agency goals." Appellee's App. Vol. II p. 110. Mills claims that reliance on this statement is age discrimination and offers evidence that substantially younger candidates that were hired only stayed with DCS for less than two years. Appellant's Br. pp. 18, 58. DCS defends its reliance on Mills's interview answer because it requires all new hires to go through an extensive three-month training program—a program whose costs are covered by the agency. Appellee's Br. p. 56. DCS's goal to keep its training costs to a minimum is not age discrimination. We, again, conclude that Mills has failed to prove age discrimination with direct evidence.

[29] Mills also raises arguments under the indirect method of proof. In order to prevail, Mills must prove: (1) he was in the protected age group at the time of

the alleged discriminatory conduct; (2) he was qualified for the job for which he applied; (3) he was not hired; and (4) a younger candidate was treated more favorably. *Taylor v. Canteen Corp.*, 69 F.3d 773, 779 (7th Cir. 1995). Mills was over sixty-two-years-old when he submitted his applications for the Family Case Manager positions, met the qualifications for the job, was not hired, and has offered evidence that substantially younger employees were hired instead. We agree with Mills that he has established a prima facie case for age discrimination. The burden then shifts to DCS to provide a legitimate, non-discriminatory reason for choosing not to hire Mills. *Id.* at 780. As addressed above, DCS did not think it was a fiscally responsible decision to hire a candidate who openly disclosed that he would only work for the agency for two to three years before retiring again. DCS also notes that a sixty-three-year-old candidate was hired after Mills's second interview. DCS has satisfied its burden. The burden shifts back to Mills to show that DCS's proffered reason is pretextual—a lie. *Id.* Mills contends that DCS is not concerned about training costs because younger candidates that were hired left the agency before working for two years. Appellant's Br. pp. 18, 58. Mills, however, fails to provide any evidence that DCS, when it hired these candidates, was aware that they planned to leave DCS within the first two years of their employment. Mills has failed to prove that DCS's legitimate, non-discriminatory reason for hiring other candidates was pretextual.

[30]     Mills also argues that DCS's hiring practices have a disparate impact on applicants over the age of forty. Like his sex-discrimination claim, Mills has

failed to plead his disparate-impact age discrimination claim with specificity. *See supra* Part II(A), slip op. pp. 14-15. Accordingly, we agree with the trial court that DCS was entitled to judgment as a matter of law on Mills's ADEA claim.

## C. Retaliation

Mills's final argument is that the trial court erred when it failed to separately consider his retaliation claim against DCS. Title VII makes it illegal for an employer to discriminate against an employee or applicant for employment because he has "opposed any practice" that Title VII forbids, or because he has "made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing[.]" 42 U.S.C. § 2000e-3(a). A plaintiff does not need to win on his underlying claims of discrimination to prevail on his retaliation claim. *See Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir. 2002). A plaintiff may employ either the direct or indirect method of proof to prove his claim of retaliation. *Poer v. Astrue*, 606 F.3d 433, 439 (7th Cir. 2010).

Under the direct method, "a plaintiff must show through either direct or circumstantial evidence that (1) [he] engaged in statutorily protected activity; (2) [he] suffered an adverse action taken by the employer; and (3) there was a causal connection between the two." *Id.* Mills argues that (1) he filed an EEOC complaint of discrimination after being turned down for the job a second time; (2) he submitted applications to DCS after filing his charge with the EEOC; and (3) DCS has not interviewed him since his EEOC filing.

Appellant's Br. p. 47. The State concedes that Mills has established prongs one and two, Appellee's Br. p. 57-58, so we address only prong three.

[33] DCS interviewed Mills in October 2013 and January 2014. He then filed his EEOC complaint in April 2014 and received his Notice of Right to Sue from the EEOC on August 15, 2014. Mills then filed two more applications with DCS on August 27 and October 30, but he was not interviewed for either position. Mills argues that the timing of his EEOC filing and DCS's refusal to interview him is circumstantial evidence to establish the required causal connection. The only evidence Mills offers regarding causation is temporal proximity. "Evidence of temporal proximity, however, standing alone, is insufficient to establish a causal connection for a claim of retaliation." *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 549 (7th Cir. 2008). "Although there may be an exception to this general rule when the adverse action occurs on the heels of protected activity, such a circumstance would be limited to matters occurring within days, or at most, weeks of each other." *Id.* (quotations and citations omitted). The timeline of events shows that four months transpired between the time that Mills filed his complaint with the EEOC and submitted two additional applications for employment with DCS. Because Mills has failed to present any other evidence pointing to causation, we conclude that he has not satisfied his burden of demonstrating retaliation under the direct-evidence method.

[34] Under the indirect method, Mills must prove that he: (1) engaged in statutorily protected activity; (2) met DCS's legitimate expectations; (3) suffered a

materially adverse action; and (4) was treated less favorably than similarly situated employees or applicants who did not engage in statutorily protected activity. *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 464 (7th Cir. 2016). DCS concedes that filing a charge with the EEOC is a statutorily protected activity and that Mills has satisfied prong one. DCS, however, contends that Mills did not meet its expectations. In the two interviews Mills had with DCS, he stated that he wanted to return to work for only two to three years to increase his retirement income. Given the cost of training a new Family Case Manager, DCS determined that it was not fiscally responsible to hire a candidate who openly disclosed that he wanted the job for only a limited time. Additionally, DCS provided legitimate, non-discriminatory reasons for not hiring Mills— hard to engage in conversation, unable to give specific examples to illustrate the use of essential skills, was rigid in his views of traditional and non-traditional families, and gave generalized answers. Appellant's App. Vol. II p. 159. We agree with DCS that Mills did not meet the agency's expectations. We conclude that it would have been redundant for DCS to have continued to interview Mills for a position that it had already determined was not a proper fit for him. Accordingly, DCS's actions were not retaliatory, and the trial court did not err when it determined that DCS was entitled to judgment as a matter of law on Mills's retaliation claim.

[35] Affirmed.

Bailey, J., and Robb, J., concur.